**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| BUCKHOLTS STATE BANK, SUSSER BANK, AND CIERA BANK, on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>    *Defendant*. | Case No. 1-25-cv-00052 |

**DEFENDANT NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**
**UNDER RULE 12(B)(6) AND MOTION TO STRIKE CLASS ALLEGATIONS**
**UNDER RULE 23 AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ............................................................................................... 3

III. LEGAL STANDARD ...................................................................................... 5

    A.    Motion to Dismiss under Rule 12(b)(6) .................................................... 5

    B.    Motion to Strike Class Allegations under Rule 23 .................................... 6

IV. ARGUMENT ................................................................................................... 7

    A.    All of Plaintiffs' Claims, Except those Brought under UCC Section 4.208, Should be Dismissed. ............................................................................... 8

            1.    UCC Section 4.208 is the only potentially applicable provision. ............................................................................... 8

            2.    The UCC preempts Plaintiffs' breach of contract claim............... 10

            3.    Plaintiffs' claims for unjust enrichment and money had and received are also preempted......................................................... 11

            4.    Plaintiffs' negligence claim is preempted and also barred by the economic loss rule.......................................................... 13

            5.    Dismissal should be with prejudice. ............................................ 14

    B.    Plaintiffs' "Check Fraud" Claims Are Not Appropriate for Class Treatment. ......... 15

            1.    Fraud-based claims are inherently individualized. ...................... 15

            2.    NFCU's defenses to each "check fraud" allegation will vary by class member................................................................... 16

            3.    State choice-of-law issues will overwhelm the nationwide class action. .................................................................................. 18

            4.    Plaintiffs are not adequate representatives of a class of "banks" and "bank customers." ................................................. 20

V. CONCLUSION................................................................................................ 20

i

## TABLE OF AUTHORITIES

Page(s)

### Cases

*In re Agape Litig.*,
    681 F. Supp. 2d 352 (E.D.N.Y. 2010) ...................................................................13

*Am. Dream Team, Inc. v. Citizens State Bank*,
    481 S.W.3d 725 (Tex. App.—Tyler 2015, pet. denied)...............................1, 10, 11

*AmSouth Bank v. Dale*,
    386 F.3d 763 (6th Cir. 2004) .............................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................5

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)...............................................................................................8

*Bell Atl. Corp. v. AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003) ................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................5

*Berger v. Compaq Comput. Corp.*,
    257 F.3d 475 (5th Cir. 2001) ..............................................................................20

*Brandt Dealer Services LLC v. Hancock Whitney Bank*,
    762 F. Supp. 3d 469 (E.D. La. 2025) ..................................................................19

*Cadence Bank v. JPMorgan Chase Bank, N.A.*,
    2024 WL 5358446 (S.D. Tex. Dec. 5, 2024)................................2, 9, 10, 11, 12, 13

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)...............................................................................................3

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ................................................................................19

*Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
    497 F.3d 546 (5th Cir. 2007) ..............................................................................14

*Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*,
    759 F.3d 498 (5th Cir. 2014) ..............................................................................12

*Cole v. Gen. Motors Corp.*,
    484 F.3d 717 (5th Cir. 2007) ....................................................................6, 18, 19

*Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*,
    462 S.W.3d 128 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ...........................13

*Cruson v. Jackson Nat'l Life Ins. Co.,*
   954 F.3d 240 (5th Cir. 2020) ................................................................................16

*DSF Lux Int'l, S.a.r.l. v. Specialized Fin. Partners, L.L.C.,*
   2009 WL 10669618 (W.D. Tex. Sept. 18, 2009)................................................2, 13

*Elson v. Black,*
   56 F.4th 1002 (5th Cir. 2023) .................................................................3, 6, 15, 18

*First Union Nat. Bank v. Richmond Cap. Partners I, L.P.,*
   168 S.W.3d 917 (Tex. App.—Dallas 2005, no pet.)................................................12

*Flecha v. Medicredit, Inc.,*
   946 F.3d 762 (5th Cir. 2020) .......................................................................6, 17, 18

*Gene And Gene LLC v. BioPay LLC,*
   541 F.3d 318 (5th Cir. 2008) ................................................................................17

*Gordon v. Sig Sauer, Inc.,*
   2019 WL 4572799 (S.D. Tex. Sept. 20, 2019) ....................................................19

*Greenwald v. Integrated Energy, Inc.,*
   102 F.R.D. 65 (S.D. Tex. 1984)............................................................................19

*Hermann Holdings Ltd. v. Lucent Techs. Inc.,*
   302 F.3d 552 (5th Cir. 2002) ................................................................................14

*Hunter v. Navy Fed. Credit Union,*
   2024 WL 3094610 (N.D. Tex. Jun. 20, 2024) ......................................................13

*Interflow Factors Corp. v. Hilton Holdings, LLC,*
   2023 WL 6631907 (Tex. App.—Beaumont 2023, no pet.) (unpub. mem. op.)................11, 12

*James v. Heritage Valley Fed. Credit Union,*
   197 F. App'x 102 (3d Cir. 2006) ..........................................................................14

*John v. Nat'l Sec. Fire & Cas. Co.,*
   501 F.3d 443 (5th Cir. 2007) ..................................................................................2

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.,*
   242 S.W.3d 1 (Tex. 2007).....................................................................................13

*Lee v. Samsung Elecs. Am., Inc.,*
   2022 WL 4663878 (S.D. Tex. Sept. 21, 2022) ................................................18, 19

*McManus v. Fleetwood Enters., Inc.,*
   320 F.3d 545 (5th Cir. 2003) ............................................................................2, 15

*Mid-South Metals, LLC v. Rodriguez,*
   2025 WL 1005051 (W.D. La. Apr. 3, 2025)........................................................20

*Moody Nat. Bank v. Texas City Dev. Ltd., Co.,*
   46 S.W.3d 373 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)......................12

iii

*Oxford v. Williams Cos., Inc.*,
    137 F. Supp. 2d 756 (E.D. Tex. 2001)....................................................................20

*Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A.*,
    791 F.2d 1177 (5th Cir. 1986)............................................................................12

*Plano Lincoln Mercury, Inc. v. Roberts*,
    167 S.W.3d 616 (Tex. App.—Dallas 2005, no pet.)..............................................10

*Reedy v. Phillips 66 Co.*,
    No. CV H-17-2914, 2018 WL 1413087 (S.D. Tex. Mar. 20, 2018).........................19

*Rosa v. Am. Water Heater Co.*,
    177 F. Supp. 3d 1025 (S.D. Tex. 2016)...........................................................19, 20

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010)..........................................................................16

*Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*,
    319 F.3d 205 (5th Cir. 2003)..............................................................................15

*Simon v. Merrill Lynch, Pierce, Fenner & Smith*,
    482 F.2d 880 (5th Cir. 1973)..............................................................................19

*Slade v. Progressive Sec. Ins. Co.*,
    856 F.3d 408 (5th Cir. 2017)............................................................................2, 15

*Smith v. EMC Corp.*,
    393 F.3d 590 (5th Cir. 2004)..............................................................................14

*Smith v. Merritt*,
    940 S.W.2d 602 (Tex. 1997)...............................................................................14

*Spitzer Management, Inc. v. Interactive Brokers, LLC*,
    2013 WL 6827945 (N.D. Ohio 2013)..................................................................13

*Stipelcovich v. Directv, Inc.*,
    129 F. Supp. 2d 989 (E.D. Tex. 2001)................................................................20

*Sw. Bank v. Info. Support Concepts, Inc.*,
    149 S.W.3d 104 (Tex. 2004).............................................................................8, 10

*Taylor v. Trevino*,
    569 F. Supp. 3d 414 (N.D. Tex. 2021)...............................................................12

*Union Bank of Benton, Ark. v. First Nat. Bank in Mt. Pleasant, Tex.*,
    621 F.2d 790 (5th Cir. 1980)...............................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..............................................................................6, 16, 18

*Walters v. Blue Cross and Blue Shield of Texas, Inc.*,
    2022 WL 902735 (N.D. Tex. Mar. 28, 2022)......................................................14

*Zachery v. Texaco Expl. & Prod., Inc.*,
  185 F.R.D. 230 (W.D. Tex. 1999) ...............................................................17

## Statutes

Tex. Bus. & Com. Code Ann. § 1.103 cmt. 2 ........................................................12

Tex. Bus. & Com. Code § 1.104 cmt ..................................................................8

UCC § 1.103(b) .........................................................................................11

UCC § 3.102 .............................................................................................10

UCC § 3.203 ..............................................................................................9

UCC § 3.404 ....................................................................................15, 16, 17

UCC § 3.405 ....................................................................................15, 16, 17

UCC § 3.417 .............................................................................................10

UCC § 4.101 .............................................................................................10

UCC § 4.105(5) ...........................................................................................9

UCC § 4.207(a) ............................................................................................9

UCC § 4.208 .......................................................................................8, 10, 17

UCC § 4.208(c) ............................................................................................9

UCC § 4.208(e) ............................................................................................8

UCC § 4.401 ........................................................................................15, 20

UCC § 4.406 .............................................................................................17

## Other Authorities

NCUA, Define the Credit Union's Purpose, https://ncua.gov/regulation-
  supervision/manuals-guides/federal-credit-union-charter-application-
  guide/phase-1/define-credit-unions-purpose (last accessed June 16, 2025) ...........................3

## Rules

Fed. R. Civ. P. 23(c)(1)(A) ..............................................................................6

## I. INTRODUCTION

Plaintiffs, three Texas community banks, seek to represent an impossibly broad, nationwide class of "[a]ll banks and bank customers" who suffered *any* financial loss as a result of *any* type of "check fraud" supposedly "facilitated by" Navy Federal Credit Union ("NFCU"). Dkt. No. 23 ("SAC") ¶¶ 30–31. Plaintiffs do not (and cannot) allege that NFCU committed the fraud— nonparty criminals are the responsible actors. Instead, Plaintiffs blame NFCU for not doing enough to stop check fraud, which is a recurring and unfortunate problem that has affected the financial industry since the check was first invented. Notwithstanding that a remedy framework for the individual banks already exists under the Texas Uniform Commercial Code ("UCC"), Plaintiffs filed this federal, putative class action asserting half-a-dozen causes of action against NFCU premised not only on the UCC but also on Texas common law and flourished with irrelevant allegations regarding supposedly insufficient Bank Secrecy Act ("BSA"), Anti-Money Laundering ("AML"), and "Know Your Customer" ("KYC") processes that Plaintiffs lack the ability to enforce. Underlying it all is Plaintiffs' contention that they—and members of the putative class (*i.e.*, "[a]ll banks and bank customers")—lost money due to "check fraud" committed by nonparty criminals for which NFCU should be wholly responsible.

Plaintiffs' Second Amended Complaint cannot support the weight of their grievances. The "check fraud" about which Plaintiffs complain should be governed by Section 4.208 of the UCC, which relates to the presentment warranty. The other UCC sections referenced by Plaintiffs do not apply because the alleged fraud relates to conduct by the endorser, not the drawer (so Section 3.418(A) is inapplicable), and NFCU is not a transferor (so Sections 4.207 and 3.416 are inapplicable). Moreover, because the UCC governs Plaintiffs' gripe about NFCU clearing the forged or fraudulent checks, Plaintiffs' common-law claims are preempted. That includes Plaintiffs' claim for breach of contract, *Am. Dream Team, Inc. v. Citizens State Bank*, 481 S.W.3d

1

725, 732 (Tex. App.—Tyler 2015, pet. denied), and their claims for unjust enrichment and money had and received, *Cadence Bank v. JPMorgan Chase Bank, N.A.*, 2024 WL 5358446, at *2, *5–6 (S.D. Tex. Dec. 5, 2024), *report and recommendation adopted*, 2025 WL 296147 (S.D. Tex. Jan. 24, 2025).  Plaintiffs' negligence claim is likewise preempted, and it is also separately barred by the economic loss rule.  *See DSF Lux Int'l, S.a.r.l. v. Specialized Fin. Partners, L.L.C.*, 2009 WL 10669618, at *3 (W.D. Tex. Sept. 18, 2009).

Equally as telling, the various types of "check fraud" alleged by Plaintiffs also doom their class allegations.  As the Fifth Circuit has repeatedly made clear, fraud-based claims inherently involve individualized fact questions that overwhelm any issues common to the class.  *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 415 (5th Cir. 2017).  Plaintiffs' fraud-based claims are not certifiable because they require individualized inquiries about, among other things, (1) whether fraud occurred; (2) the type of fraud; (3) the responsibility of each alleged party, including NFCU, the bank, the customer, and the fraudster; (4) whether NFCU's additional review procedures applied based on the value of the check; and (5) whether NFCU's policies caused or contributed to the alleged fraud.  *See, e.g.*, *id.* at 415 (reversing order certifying fraud class); *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 550 (5th Cir. 2003) (same).

Individual inquiries will also be necessary regarding NFCU's defenses to each putative class member's claim, which state's laws apply to the claims of each putative class member in the nationwide class, and whether each putative class member actually suffered some "financial loss." Plaintiffs also cannot adequately represent "bank customers" because their interests are not aligned:  Only the bank or its customer can recover, not both.  The flaws in Plaintiffs' class allegations are apparent from the face of their complaint and cannot be cured with discovery or further amendment.  *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).  Thus,

there is no reason to delay.  This Court should strike the class allegations now.  *E.g.*, *Elson v. Black*, 56 F.4th 1002, 1007–08 (5th Cir. 2023) (affirming order striking fraud class allegations).

Plaintiffs have already amended their complaint twice, and the legal deficiencies in their claims cannot be cured by yet another amendment.  The Court should not give Plaintiffs a fourth bite at the apple.  NFCU respectfully requests that the Court dismiss with prejudice all of Plaintiffs' claims, except their claim under Section 4.208 of the UCC, and strike their class allegations so that the parties can litigate this case properly as an individual dispute between the named parties, not as a putative class action.  Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979).  The usual rule should apply here.

## II. BACKGROUND

NFCU is a member-owned, not-for-profit federal credit union founded in 1933.  It serves the military community, veterans, and their families by offering affordable products and services.  As a federal credit union, NFCU is a cooperative association organized to promote "thrift among [its] members and [to] creat[e] a source of credit for provident or productive purposes."[1]  Plaintiffs are three Texas community banks that allegedly lost money due to check fraud.  They each allege a different type of fraud, but they all blame NFCU.

Plaintiff Buckholts State Bank ("Buckholts") asserts it lost money due to a forged endorsement.[2]  Specifically, Buckholts alleges that its customer, Intex Distributing Co., Inc., wrote a $16,575.90 check made payable to a company in Alabama.  SAC ¶¶ 1, 25.  A thief allegedly

---

[1] NCUA, Define the Credit Union's Purpose, https://ncua.gov/regulation-supervision/manuals-guides/federal-credit-union-charter-application-guide/phase-1/define-credit-unions-purpose  (last accessed June 16, 2025).

[2] For purposes of the 12(b)(6) portion of this motion, NFCU proffers as true the allegations asserted in the SAC.

intercepted that check, fraudulently endorsed it, and then deposited the stolen check in a fraudulent business account opened in the payee's (*i.e.*, the Alabama company's) name. *Id.* ¶¶ 1, 25–26. Following deposit, NFCU presented the check to Buckholts, which accepted the check and transferred funds accordingly. *Id.* ¶¶ 25-26.

Plaintiff Susser Bank ("Susser") asserts it paid a check that had been altered to change the name of the payee. Susser alleges a thief intercepted a $26,407.44 check issued by Susser's customer, Pronto Delivery, and altered the stolen check (rather than fraudulently signing as the intended payee) to make it appear payable to Lawanda Staton instead of Roundstone Management, Ltd. *Id.* ¶ 3. Susser alleges that someone "possibly using the name Lawanda Staton" deposited the check at NFCU. *Id.*

Finally, Plaintiff Ciera Bank ("Ciera") asserts it suffered a loss as a result of an alteration to both the payee and the amount of a check. Ciera alleges its customer, Susan Barry, wrote a $464.00 check on July 12, 2024, payable to Deercreek HPR, Inc. *Id.* ¶ 4. A thief intercepted the check in the mail, altered it, and presented it to NFCU. *Id.* But the check presented to NFCU was made out to Quinlan Abney. *Id.* And although the original check was for $464.00, the thief altered the amount to $9,661.52. *Id.* Ciera claims that "a NFCU customer, possibly using the name Quinlan Abney, altered the check" and "deposited the check at NFCU." *Id.*

Plaintiffs filed their second amended complaint on June 2, 2025, alleging a variety of common law and UCC claims based on alleged "check fraud." *Id.* ¶ 1. At bottom, Plaintiffs argue NFCU would have detected and prevented the alleged fraud if it had better policies, practices, and procedures. *Id.* In particular, Plaintiffs allege that NFCU had "insufficient" BSA, AML, and KYC policies. *Id.* ¶¶ 9, 64–73. Plaintiffs further allege that NFCU's policies do not require increased

4

fraud review "unless the check value exceeds $25,000" and, as a result, "all it takes to bypass the review process for fraudulent checks is for the check value to be less than $25,000." *Id.* ¶ 23.

The three banks purport to represent a nationwide class of "[a]ll banks and bank customers" that "have suffered financial loss as a result of check fraud facilitated by Navy Federal Credit Union." *Id.* ¶ 30. They argue that class treatment is appropriate because "all members" of the putative class allegedly "have been subjected to NFCU's policies, practices and procedures." *Id.* ¶¶ 35, 37. But the face of their complaint shows different treatment for different members of the putative class. Indeed, Plaintiffs allege that the NFCU practice or procedure that may have applied to the fraudulent checks paid by Buckholts and Ciera (both under $25,000) was different from, and less rigorous than, the "review process" that applied to the fraudulent check paid by Susser, which was well over the $25,000 "check review threshold." *Id.* ¶ 23.

### III. LEGAL STANDARD

#### A.      Motion to Dismiss under Rule 12(b)(6)

This Court must dismiss a complaint under Rule 12(b)(6) if the complaint fails to state a claim for which relief may be granted as a matter of law. To survive dismissal at the pleading stage, a complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that pleads only a "sheer possibility that a defendant has acted unlawfully" will not suffice. *Id.* at 678 (citation omitted). Although the Court must accept factual allegations as true, this tenet is "inapplicable to legal conclusions." *Id.* After stripping away the "conclusory statements," the Court must rely on its "experience and common sense," *id.* at 678–79, to determine whether the factual allegations "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

**B.     Motion to Strike Class Allegations under Rule 23**

Under Rule 23, class allegations may be struck at the pleading stage "when it is apparent from the complaint that a class action cannot be maintained." *Elson*, 56 F.4th at 1006. The Court need not wait until after the parties have engaged in expensive and potentially unnecessarily burdensome discovery. The determination of whether to allow a case to proceed as a class action should be made "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A).

As the parties asserting claims on behalf of a putative class, Plaintiffs have the burden of proving that class certification is appropriate. *Elson*, 56 F.4th at 1006. They must establish numerosity, commonality, typicality, and adequacy of class representation under Rule 23(a), and one of the three requirements of Rule 23(b). *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723–24 (5th Cir. 2007). Plaintiffs seek certification under Rule 23(b)(3), SAC ¶¶ 37–38, so they must show "(1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003). In other words, common questions must predominate "over questions affecting only individual members" of the putative class. *Id.* at 301–02. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate *common answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 767 (5th Cir. 2020) (reversing class certification of all people who had received a form debt collection letter) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

## IV. ARGUMENT

Plaintiffs assert six causes of action against NFCU. All but one of them should be dismissed. Plaintiffs' only potentially viable legal claim for the harm alleged is under UCC Section 4.208, which establishes a liability system for alleged violations of certain required warranties made when the depositary bank (NFCU) presents for payment a check to the drawee bank (Plaintiffs). The other UCC provisions cited by Plaintiffs do not apply. In addition, because Plaintiffs' claims are grounded in the UCC, their common law claims for breach of contract, unjust enrichment, money had and received, and negligence are all preempted. Plaintiffs' negligence claim is also barred by the economic loss rule—and there is no private right of action to enforce laws related to the BSA, AML, and KYC. Accordingly, NFCU respectfully requests that the Court dismiss with prejudice every claim except for those brought under UCC Section 4.208.

Even assuming some of Plaintiffs' claims survive dismissal, none are appropriate for class treatment. Plaintiffs' fraud-based claims—like nearly all fraud claims—are chock-full of individualized inquiries that, on their face, would overwhelm any common questions. Plaintiffs' own allegations prove it: Some putative class members (like Buckholts) suffered from an alleged forged endorsement. Others (like Susser) from an alleged alteration to the payee. And others (like Ciera) from an alleged alteration to the payee and the amount. And still others from no fraud at all. Each claim would require a mini-trial to determine, among other things, (1) whether fraud occurred; (2) the type of fraud; (3) the responsibility of each alleged party, including NFCU, the bank, the customer, and the fraudster; (4) whether NFCU's additional review procedures applied based on the value of the check; and (5) whether NFCU's policies caused or contributed to the alleged fraud. This says nothing of the individualized issues related to NFCU's defenses to each individual claim; the choice of law issues that infect a nationwide class; or the differences between banks and their customers, both of whom are subsumed within Plaintiffs' sweeping class

7

definition.  For all or any of these reasons, the Court should strike Plaintiffs' class allegations—and save the parties the resources that would otherwise be expended litigating an "in terrorem" suit.  *Cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (discussing effect of "damages allegedly owed to tens of thousands of potential claimants" where claims are "aggregated and decided at once").

### A.    All of Plaintiffs' Claims, Except those Brought under UCC Section 4.208, Should be Dismissed.

#### 1.    UCC Section 4.208 is the only potentially applicable provision.

The objective of the UCC is to promote certainty and predictability in commercial transactions.  *See Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 110 (Tex. 2004); *Union Bank of Benton, Ark. v. First Nat. Bank in Mt. Pleasant, Tex.*, 621 F.2d 790, 792 (5th Cir. 1980) ("[T]he U.C.C. is found to be a finely tuned statutory mechanism containing interlocking provisions designed to provide certainty in commercial transactions.").  "By prospectively establishing rules of liability that are generally based not on actual fault but on allocating responsibility to the party best able to prevent the loss by the exercise of care, the UCC not only guides commercial behavior but also increases certainty in the marketplace and efficiency in dispute resolution."  *Sw. Bank*, 149 S.W.3d at 109.  Furthermore, the UCC was intended "as a uniform codification of permanent character covering an entire 'field' of law."  *Id.* at 111 (quoting Tex. Bus. & Com. Code § 1.104 cmt).

UCC Section 4.208 sets the rules that apply when one bank presents a check to another bank for payment.  The presenting bank makes certain enumerated warranties—for example, that the check has not been altered, and the presenting bank is authorized to "obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft."  UCC § 4.208.  These warranties "cannot be disclaimed."  UCC § 4.208(e).  Instead, unless one of the specified

affirmative defenses applies, *see* UCC § 4.208(c), the presenting bank is liable to the paying bank if one of the enumerated warranties turns out to be false. *Cf. Cadence Bank*, 2024 WL 5358446, at \*6. Plaintiffs assert claims against NFCU under UCC Section 4.208. That is the only potentially applicable provision of the UCC: Sections 3.418, 4.207, and 3.416 (all referenced in Plaintiffs' complaint) do not apply. Plaintiffs' claims under all of the other UCC provisions should be dismissed.

For starters, Section 3.418 by its plain language permits the drawee bank (Plaintiffs) to recover in only two circumstances: (1) when the drawee bank (Plaintiffs) mistakenly believed that the check had not been stopped; and (2) when the drawee bank (Plaintiffs) mistakenly believed that the signature of the check's *drawer* (Plaintiffs' customers) was authorized. Here, the alleged fraud in each instance is from the *endorser* of the check—not the drawer. And Plaintiffs do not allege that their customers (the drawers) placed a stop payment order on the checks at issue or that their signatures on their own checks were unauthorized.

UCC Sections 4.207 and 3.416 are equally inapplicable. Those provisions concern *transfer* warranties. Plaintiffs do not allege that NFCU was a transferor for any of the alleged transactions. Nor could they—as the UCC defines "transfer" as delivery by "a person other than its issuer" to give the recipient "the right to enforce the instrument." UCC § 3.203. Moreover, Section 4.207 relates to warranties made to "the transferee and to any subsequent collecting bank." UCC § 4.207(a). And Plaintiffs do not qualify as "collecting banks" because the UCC makes clear that "payor bank[s]" (Plaintiffs here) are not "collecting bank[s]." UCC § 4.105(5). Indeed, "the plain wording of section 4.207 appears to exclude the possibility that a transfer warranty would run to a

payor bank."[3]  *Cadence Bank*, 2024 WL 5358446, at *7.

### 2.    The UCC preempts Plaintiffs' breach of contract claim.

The UCC provides the sole framework for any liability of NFCU.  *Sw. Bank*, 149 S.W.3d at 107 ("The UCC contains a comprehensive and carefully considered allocation of responsibility among parties to banking relationships.").  As a result, Plaintiffs' claim for breach of contract fails as a matter of law.

It is black-letter law that "[w]here the UCC applies, common law rules regarding breach of contract do not apply."  *Am. Dream Team*, 481 S.W.3d at 732.  *American Dream Team* offers a typical example of how this works in practice.  In that case, the plaintiff sued Citizens State Bank for improperly reversing a provisional credit extended on a counterfeit check.  *Id.* at 728.  Because Section 4-214 of the UCC applies to chargebacks, the court found that "[a]ny cause of action that [the plaintiff] had for breach of contract was preempted by the UCC."  *Id.* at 732; *see also Plano Lincoln Mercury, Inc. v. Roberts*, 167 S.W.3d 616, 624 (Tex. App.—Dallas 2005, no pet.) ("Where the [UCC] applies, common law rules regarding breach of contract do not apply.").

This Court should do the same.  Plaintiffs allege that NFCU breached its contract with Plaintiffs by "allowing the improper negotiation of each check" and "receiving funds from Plaintiffs that were not supposed to go to NFCU."  SAC ¶ 79.  But Section 4-208 of the UCC applies to Plaintiffs' claims (which are for "presentment warranties"), so any claim for breach of contract is preempted.  *Cadence Bank*, 2024 WL 5358446, at *6.

---

[3] UCC Section 3.417 (SAC ¶ 84) requires nearly identical presentment warranties as UCC Section 4.208, but in the general context of negotiable instruments.  Because Article 4 of the UCC specifically addresses bank deposits and collections, Section 4.208 is the appropriate provision in this context, not UCC Section 3.417.  *Compare* UCC § 3.102 (stating Article 4 controls over Article 3), *and* UCC § 3.417, *with* UCC § 4.101 (Article 4 covers bank deposits and collections), *and* UCC § 4.208.

### 3. Plaintiffs' claims for unjust enrichment and money had and received are also preempted.

The UCC also preempts Plaintiffs' unjust enrichment and money had and received claims. *Cadence Bank*, 2024 WL 5358446, at *2, *4–6 ("The court concludes that the applicable UCC provisions, §§ 4.208 and 4.302, govern this dispute and preempt [the] common law claims."); *see also Am. Dream Team*, 481 S.W.3d at 733; *Interflow Factors Corp. v. Hilton Holdings, LLC*, 2023 WL 6631907, at *6 (Tex. App.—Beaumont 2023, no pet.) (unpub. mem. op.).  Plaintiffs advance three arguments in their complaint to avoid preemption—each fails.

*First*, Plaintiffs argue that money had and received claims are not preempted because they are mentioned in UCC § 3.118(g).  SAC ¶¶ 86–87.  But that provision stands only for the unremarkable proposition that a money had and received claim may lie in some circumstances when UCC Article 3 applies and does not conflict with the common law claim.  That is not the case here, as illustrated by *Cadence Bank*.  *Cadence Bank*, 2024 WL 5358446, at *4, *6.  There, the court held that all of the plaintiff's common law claims—including for unjust enrichment and money had and received—were preempted by the provisions in Article 4 of the UCC because those "common law claims would *conflict with*, and *not merely supplement*" the carefully considered loss allocation scheme set out in UCC Sections 4.208 and 4.302.  *Id.* (emphasis added).  In other words, when Section 4.208 applies—as it does here—common law claims are preempted.

*Second*, Plaintiffs point to UCC § 1.103(b) to avoid preemption.  SAC ¶ 88.  But Section 1.103(b) states in unambiguous terms that "the principles of law and equity . . . supplement [the UCC's] provisions" "[u]nless *displaced* by the particular provisions of [the UCC]."  UCC § 1.103(b) (emphasis added).  As discussed above, Section 4.208 of Article 4 of the UCC creates a careful, comprehensive liability scheme for bank collections and transactions.  *See supra* pp. 8–9.  That scheme displaces common law claims.  *See Cadence Bank*, 2024 WL 5358446, at *6 (the

common law claims are preempted because they would "supplant, not merely supplement" the UCC's scheme); *Interflow Factors Corp.*, 2023 WL 6631907, at *6 ("The commentary to section 1.103 states that the UCC preempts principles of common law and equity that are inconsistent with either its principles or its purposes and policies."); Tex. Bus. & Com. Code Ann. § 1.103 cmt. 2.

*Third*, Plaintiffs cite *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498 (5th Cir. 2014) and *Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A.*, 791 F.2d 1177 (5th Cir. 1986) for the proposition that an "outright conflict between a common law claim and the provisions of the UCC was insufficient to displace a common law claim." SAC ¶ 89. But both of those cases recognize preemption in the event of a conflict. *Coastal Agric. Supply, Inc.*, 759 F.3d at 507–08 ("any inconsistencies between the various elements of the common law action and the particular provisions of the UCC must be resolved in the UCC's favor") (alterations adopted); *Peerless Ins. Co.*, 791 F.2d at 1180 (agreeing common law rights still exist "but only to the extent that it does not conflict with Code provisions") (internal citations omitted).

What matters is whether the specific provision at issue—here, Section 4.208—"displaces and thus preempts the common law claims . . . or whether it is supplemented by those common law claims." *Cadence Bank*, 2024 WL 5358446, at *5; *see also Moody Nat. Bank v. Texas City Dev. Ltd., Co.*, 46 S.W.3d 373, 378 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("Common law claims are precluded when a claim would impose liability inconsistent with any of the [UCC's] provisions"). Section 4.208 displaces claims for unjust enrichment and money had and received. It does not concern itself with "justice" (a requirement for money had and received, *Taylor v. Trevino*, 569 F. Supp. 3d 414, 436 (N.D. Tex. 2021)) or "restitution" (the remedy for unjust enrichment, *First Union Nat. Bank v. Richmont Cap. Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex. App.—Dallas 2005, no pet.)). Allowing Plaintiffs' money had and received claim or their alleged

unjust enrichment claim to proceed "would disturb the certainty and balance that [Section 4.208] creates." *Cadence Bank*, 2024 WL 5358446, at *6.

### 4. Plaintiffs' negligence claim is preempted and also barred by the economic loss rule.

The Court should dismiss Plaintiffs' negligence claim for three reasons:  (1) Plaintiffs' negligence claim is also preempted by the UCC; (2) the economic loss rule bars the claim; and (3) Plaintiffs cannot sue to enforce the BSA, AML, and KYC laws and regulations.

*First*, for the reasons explained above, Plaintiffs' negligence claim is preempted by the UCC.  *Supra* pp. 11–12; *see also Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*, 462 S.W.3d 128, 138 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (negligence claim preempted by UCC).

*Second*, even if it were not preempted (it is), Plaintiffs' negligence claim is barred by the economic loss rule.  "[W]hen the injury is only the economic loss to the subject of the contract itself the action sounds in contract alone." *DSF Lux Int'l*, 2009 WL 10669618, at *3 (cleaned up). The rule precludes artful pleading in tort to recover purely economic losses.  *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12, 13 (Tex. 2007).  That is exactly what Plaintiffs are trying to do here.

*Third*, to the extent Plaintiffs are alleging that NFCU violated certain duties imposed under the BSA, AML, and KYC laws and regulations, *see* SAC ¶¶ 64–73 & n.2, Plaintiffs have no private right of action to enforce them.  *See Spitzer Management, Inc. v. Interactive Brokers, LLC*, 2013 WL 6827945, at *2 (N.D. Ohio 2013) ("Neither [the Patriot Act nor the BSA] creates a private cause of action. . . ." (citing *In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("[B]ecause the [BSA] does not create a private right of action, the Court can perceive no sound reason to recognize a duty of care that is predicated upon the statute's monitoring requirements."))); *see also Hunter v. Navy Fed. Credit Union*, 2024 WL 3094610, at *5–6 (N.D.

Tex. Jun. 20, 2024) ("There is no private right of action under the [BSA]."); *James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 106 (3d Cir. 2006) (BSA "does not authorize a private cause of action against a financial institution or its employees"); *AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004) (noting that "the Bank Secrecy Act does not create a private right of action."). Nor can they use those laws to bootstrap a per se negligence claim. *Walters v. Blue Cross and Blue Shield of Texas, Inc.*, 2022 WL 902735, at *5–6 (N.D. Tex. Mar. 28, 2022) (holding that "a statute is not an appropriate basis for a negligence per se claim when a legislative body declines to provide for an individual private right of action") (cleaned up); *Smith v. Merritt*, 940 S.W.2d 602, 607–08 (Tex. 1997) (state statute not appropriate basis for negligence per se action).

### 5.    Dismissal should be with prejudice.

If the Court dismisses these claims, it should do so with prejudice for two reasons. *First*, dismissal with prejudice is appropriate when there is "repeated failure to cure deficiencies by previous amendments." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Plaintiffs have already had two opportunities to amend their complaint after receiving notice of the deficiencies identified in this motion. Although ordinarily leave to amend is freely given, "that course need not be followed here since plaintiffs have already twice amended their complaint." *Hermann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002). Plaintiffs have had ample opportunity to amend their claims, but the claims asserted still fail. And any attempt to revive Plaintiffs' claims would be "futile." *Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007). No amount of repleading would change the fact that the UCC provisions described above are inapposite, that Plaintiffs' breach of contract, unjust enrichment, money had and received, and negligence claims are preempted by the UCC, or that Plaintiffs' negligence claim is barred by the economic loss rule. No amount of repleading could cure those legal flaws.

14

**B.      Plaintiffs' "Check Fraud" Claims Are Not Appropriate for Class Treatment.**

**1.      Fraud-based claims are inherently individualized.**

The Fifth Circuit has repeatedly held that fraud-based claims require individualized factual investigation and are not suitable for class treatment. *Elson*, 56 F.4th at 1007–08 (affirming order striking fraud class allegations); *see also Slade*, 856 F.3d at 415 (reversing order certifying fraud class); *McManus*, 320 F.3d at 550 (same); *Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 220–21, 224 (5th Cir. 2003) (same).  This case is no different.

Plaintiffs seek to certify a nationwide (or Texas subclass) of "[a]ll banks and bank customers" who "suffered financial loss as a result of check fraud facilitated by Navy Federal Credit Union . . . from January 10, 2022 to the present."  SAC ¶¶ 30–31.  All of Plaintiffs' claims are based on "check fraud" that Plaintiffs believe NFCU should have detected and prevented.  Their claims raise individualized, fact-intensive issues regarding the circumstances of each transaction at issue.  Specifically, Plaintiffs' claims all require individual inquiries regarding:

(1) whether fraud occurred;

(2) the type of check fraud because the UCC does not treat all fraud the same, *compare* UCC § 3.404 (addressing impostors and fictitious payees), *with* § 3.405 (addressing an employer's responsibility for fraudulent endorsement by an employee);

(3) the responsibility of each involved party (NFCU, the bank, the customer, and the fraudster), including whether and to what extent the drawer of the check had an obligation to discover any fraudulent endorsement or alteration or the drawee bank had an obligation to detect the alleged fraud;

(4) whether and which NFCU's policies apply; and

(5) whether the putative class members suffered "financial loss," including whether putative class member banks reimbursed their putative class member customers, *see* UCC § 4-401 (bank can only charge those items which are "properly payable").

In short, Plaintiffs' "check fraud" claims will lead to mini-trials as to the who, what, when,

where, how, and why of each allegedly fraudulent scenario.  There is thus no "glue" here "holding the alleged *reasons* for [improperly paid checks] together."  *Dukes*, 564 U.S. at 352.

### 2. NFCU's defenses to each "check fraud" allegation will vary by class member.

Individualized issues predominate for yet another reason—NFCU's defenses to each "check fraud" claim will depend on the unique circumstances of each alleged instance of check fraud.  The Fifth Circuit has made clear that "predominance of individual issues necessary to decide an affirmative defense may preclude class certification."  *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 256 (5th Cir. 2020) (citation and internal quotations omitted) (vacating certification order in part based on availability of affirmative defenses).  "Even in form contract cases, '[t]he risk of voluminous and individualized extrinsic proof [defeating predominance] runs particularly high where a defendant raises substantial affirmative defenses to breach.'"  *Id.* (alterations in original) (quoting *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1177 (11th Cir. 2010)).

The UCC contemplates specific and distinct affirmative defenses under Section 3.404 (regarding impostors and fictitious payees); Section 3.405 (regarding employer responsibility for fraud by an employee); Section 3.406 (regarding negligence contributing to forgery); and Section 4.406 (regarding customer's duty to report unauthorized signatures).  Whether any of these defenses applies depends on the individual circumstances of the alleged check fraud.  For example, Sections 3.406 and 4.406 address scenarios in which the drawer (the person who wrote and signed the check) is precluded from asserting an unauthorized endorsement or alteration against the drawee.[4]  Depending on the type of fraud, NFCU can also defend itself by demonstrating that the

---

[4] For example, if Intex's negligence contributed to its signature being forged, NFCU can assert an affirmative defense against NFCU's claim under Section 3.406.

drawer failed to discover and report its unauthorized signature, UCC § 4.406, that an imposter tricked the drawer, UCC § 3.404, that an employer was responsible for its employee's fraudulent endorsement, UCC § 3.405, or that the claimant did not give notice of the breach of warranty within 30 days, UCC § 4.208.  Thus, individualized inquiries will be necessary to determine whether NFCU has an affirmative defense to each putative class member's claim.[5]  *See Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 328–29 (5th Cir. 2008) (rejecting class because "individual inquiries . . . are necessary," because "there is no class-wide proof available to decide [the issues]," and "only mini-trials can determine [the] issue").  As such, the "predominance of individual issues necessary to decide an affirmative defense . . . preclude[s] class certification." *See id.* at 327.

Plaintiffs' attack on NFCU's review procedures is not the elixir they think it is.  Plaintiffs' own complaint admits that NFCU's "policies, practices, and procedures" vary based on the value of the check:  Plaintiffs allege NFCU has certain "business risk" policies and procedures for checks over $25,000 that do not apply for checks under that amount.  SAC ¶¶ 1, 23.  Yet Plaintiffs seek to certify a class of banks and bank customers regardless of the amount of their alleged "financial loss."  Courts in this circuit reliably hold that when differing policies or procedures within a company are at issue for different putative class members, a class cannot be certified.  *See Zachery v. Texaco Expl. & Prod., Inc.*, 185 F.R.D. 230, 246 (W.D. Tex. 1999); *Flecha*, 946 F.3d at 766–68 (reversing class certification where policies not uniform).

---

[5] Although the Court must accept the factual allegations as true at this stage, NFCU notes that even Plaintiffs' Section 4.208 claims may be subject to different affirmative defenses.  For example, Ciera will need to prove that the alleged fraud involved a forged endorsement—as opposed to a forged *drawer's* signature—and Susser will need to prove that the alleged fraud was due to an altered check as opposed to a counterfeit check.  These different scenarios implicate different affirmative defenses under UCC Sections 3.406 and 4.406 and further demonstrate why Plaintiffs' claims are inordinately individualized and thus inappropriate for class treatment.

*Flecha* is instructive. There, the plaintiff bought a claim under the Fair Debt Collection Practices Act (FDCPA) alleging that the defendant, a debt collector, had sent her a collection letter threatening to sue her over an unpaid medical debt. *Flecha*, 946 F.3d at 765. The Fifth Circuit held that class resolution was inappropriate even though everyone in the class had received the letter because the FDCPA penalizes *empty* threats, not all threats. *Id.* at 767. Because there was no evidence of a "uniform intention" to sue (or not to sue), and because "some creditors may not have a uniform litigation policy when it comes to all debtors," it was "'impossible to say that examination of all the class members' claims for relief [would] produce a common answer to the crucial question' *why was I threatened*." *Id.* at 766–67 (quoting *Dukes*, 564 U.S. at 352).

Here, Plaintiffs' class allegations are even weaker. Plaintiffs concede that this case involves different policies—they even go so far as to invoke NFCU's policies related to the BSA, AML, and KYC laws and regulations as an explanation for how "[t]he losses sustained by Plaintiffs were made possible." SAC ¶ 64. Individual mini-trials will be necessary to determine whether and which alleged internal policy caused or contributed to each putative class member's harm. Accordingly, "'it is impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question'" *why was my check improperly paid*. *Flecha*, 946 F.3d at 767 (quoting *Dukes*, 564 U.S. at 352).

### 3.    State choice-of-law issues will overwhelm the nationwide class action.

Plaintiffs' proposed nationwide class cannot be certified "as a matter of law" because individual choice-of-law issues predominate. *Elson*, 56 F.4th at 1006. "[I]n a diversity class action, as is the case here, inherent in the predominance inquiry is a determination of which states' substantive laws will apply to the claims." *Lee v. Samsung Elecs. Am., Inc.*, 2022 WL 4663878, at *6 (S.D. Tex. Sept. 21, 2022) (quoting *Cole*, 484 F.3d at 724), *report and recommendation adopted*, No. 4:21-CV-01321, 2022 WL 6778991 (S.D. Tex. Oct. 11, 2022) *and report and*

*recommendation adopted*, No. 4:21-CV-01321, 2022 WL 7757471 (S.D. Tex. Oct. 12, 2022). "This is because if multiple states' laws apply and those laws vary, the variations may impact whether common issues of law and fact predominate among the class members." *Id.*

Plaintiffs' UCC claims will vary substantially by state, as the states do not agree on the degree to which the UCC preempts various common-law claims. *See Brandt Dealer Services LLC v. Hancock Whitney Bank*, 762 F. Supp. 3d 469, 480 (E.D. La. 2025) (comparing the "broad view of UCC preemption" in Louisiana with the "narrower view of preemption" in North Carolina). And to the extent Plaintiffs' common-law claims in this case survive dismissal, those claims will also vary substantially by state. *See Greenwald v. Integrated Energy, Inc.*, 102 F.R.D. 65, 71 (S.D. Tex. 1984) (no commonality in state common law claims of fraud, negligence, and breach of fiduciary duty because they would "vary substantially depending on the state") (citing *Simon v. Merrill Lynch, Pierce, Fenner & Smith*, 482 F.2d 880, 883 (5th Cir. 1973)).

Given these, and likely many other, significant variations in state law, Plaintiffs cannot meet their burden to establish predominance for a nationwide class.[6] *Cole*, 484 F.3d at 730; *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 752 (5th Cir. 1996); *Lee*, 2022 WL 4663878, at *7 (striking nationwide fraud class allegations because plaintiffs "failed to demonstrate that the common issues w[ould] predominate" given potential state-law variations); *Gordon v. Sig Sauer, Inc.*, 2019 WL 4572799, at *22 (S.D. Tex. Sept. 20, 2019) (striking nationwide warranty and unjust enrichment classes based on state-law variations); *see also Reedy v. Phillips 66 Co.*, No. CV H-17-2914, 2018 WL 1413087, at *13 (S.D. Tex. Mar. 20, 2018) (striking nationwide class allegations for lack of predominance); *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1050

---

[6] The Texas subclass suffers the same fate, but for different reasons: Each transaction will have to be assessed to determine which UCC provision applies and whether it preempts the putative class member's common-law claims.

(S.D. Tex. 2016) (same); *Oxford v. Williams Cos., Inc.*, 137 F. Supp. 2d 756, 764 (E.D. Tex. 2001) (*sua sponte* denying class certification for national class); *Stipelcovich v. Directv, Inc.*, 129 F. Supp. 2d 989, 994 (E.D. Tex. 2001) (same).

### 4. Plaintiffs are not adequate representatives of a class of "banks" and "bank customers."

Plaintiffs are banks seeking to represent not just other "banks" but all "bank customers," including individuals, who may have experienced different types of check fraud. In most scenarios, however, either the draftee bank or the drafter of the check, but not both, will be able to recover in a claim against NFCU for an improperly presented check. *See Mid-South Metals, LLC v. Rodriguez*, 2025 WL 1005051, at \*4 (W.D. La. Apr. 3, 2025); *see also* UCC § 4.401. Thus, the named plaintiffs, as the draftee banks, have interests that are antagonistic to the absent class members that are bank customers and drafters. *See Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 480 (5th Cir. 2001) ("[B]ecause absent class members are conclusively bound by the judgment in any class action brought on their behalf . . . [d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives . . . where those differences create conflicts between the named plaintiffs' and the class members' interests."). Plaintiffs therefore cannot adequately represent a class of "banks" and "bank customers."

## V. CONCLUSION

For the reasons stated above, NFCU respectfully requests that the Court dismiss Plaintiffs' claims with prejudice (other than the UCC Section 4.208 presentment warranty claim) and strike Plaintiffs' class allegations.

DATED:  June 30, 2025                    Respectfully submitted,

*/s/ Andrew LeGrand*
Andrew P. LeGrand
  Texas Bar No. 24070132
  ALeGrand@gibsondunn.com
Mike Lyons
  Texas Bar No. 24071169
  MLyons@gibsondunn.com
Cristina Squiers
  Texas Bar No. 24093764
  CSquiers@gibsondunn.com
Emily Cardone
  Texas Bar No. 24116592
  ECardone@gibsondunn.com
Noah Frazier
  Texas Bar No. 24138680
  nfrazier@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  214.698.3100
Facsimile:  214.571.2900

*Counsel for Navy Federal Credit Union*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7, the undersigned hereby certifies that counsel for Defendant conferred with counsel for Plaintiffs, who stated that Plaintiffs oppose the relief requested in this Motion.

/s/ *Andrew LeGrand*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

/s/ *Andrew LeGrand*