**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| BUCKHOLTS STATE BANK, SUSSER BANK, AND CIERA BANK, on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>    *Defendant*. | Case No. 1-25-cv-00052 |

**DEFENDANT NAVY FEDERAL CREDIT UNION'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS UNDER RULE 12(B)(6) AND ITS MOTION TO STRIKE CLASS
ALLEGATIONS UNDER RULE 23**

**TABLE OF CONTENTS**

Page

I.    Plaintiffs' Claims Are Not Appropriate for Class Treatment and Should Be Struck. ......... 1

    A.    Individual issues predominate................................................................................. 1

    B.    Plaintiffs are not adequate class representatives. .................................................... 4

    C.    The Court need not wait for class certification. ...................................................... 5

II.    Plaintiffs Should Only Be Allowed to Pursue Their Presentment Warranty Claims. ......... 5

    A.    Plaintiffs do not allege that NFCU transferred the checks at issue......................... 6

    B.    The UCC has created a comprehensive scheme in which sections 4.208 and 4.302 preempt Plaintiffs' equitable and common-law claims.......................................... 7

    C.    Plaintiffs cannot enforce federal banking laws and regulations. ............................ 9

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*1/2 Price Checks Cashed v. United Auto. Ins. Co.*,
344 S.W.3d 378 (Tex. 2011).............................................................................................9

*Am. Dream Team, Inc. v. Citizens State Bank*,
481 S.W.3d 725 (Tex. App.—Tyler 2015, pet. denied)....................................................9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..........................................................................................................4

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..........................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................5

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) ............................................................................................5

*Cadence Bank v. JPMorgan Chase Bank, N.A.*,
2024 WL 5358446 (S.D. Tex. Dec. 5, 2024), *report and recommendation
adopted*, 2025 WL 296147 (S.D. Tex. Jan. 24, 2025) ...........................................6, 7, 8

*Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*,
759 F.3d 498 (5th Cir. 2014) ............................................................................................8

*Cole v. Gen. Motors Corp.*,
484 F.3d 717 (5th Cir. 2007) ............................................................................................3

*Earl v. Boeing*,
21 F.4th 895 (5th Cir. 2021) .............................................................................................5

*Elson v. Black*,
56 F.4th 1002 (5th Cir. 2023) ...................................................................................1, 2, 4

*Flecha v. Medicredit, Inc.*,
946 F.3d 762 (5th Cir. 2020) ............................................................................................4

*Gene And Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008) ............................................................................................2

*Haynes v. Shonaz Foods, Inc.*,
2025 WL 627525 (W.D. Tex. Feb. 19, 2025)....................................................................4

*Hunter v. Navy Fed. Credit Union*,
2024 WL 3094610 (N.D. Tex. Jun. 20, 2024) .................................................................10

# TABLE OF AUTHORITIES
## (*continued*)

Page(s)

*John v. Nat'l Sec. Fire and Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) ....................................................................................3, 5

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
   751 F.3d 368 (5th Cir. 2014) ......................................................................................10

*Mills v. Warner-Lambert Co.*,
   581 F. Supp. 2d 772 (E.D. Tex. 2008) ........................................................................8

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ....................................................................................2, 3

*Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A.*,
   791 F.2d 1177 (5th Cir. 1986) .....................................................................................8

*Perales v. First Am. Bank Tex., SSB*,
   2001 LEXIS 13977 (N.D. Tex. 2001)........................................................................10

*Rutledge v. United States*,
   161 F.3d 7 (5th Cir. 1998) .........................................................................................10

*Smith v. Merritt*,
   940 S.W.2d 602 (Tex. 1997).......................................................................................10

*Southstar Bank, S.S.B. v. JPMorgan Chase Bank, N.A.*,
   2025 WL 2052310 (S.D. Tex. July 22, 2025)......................................................6, 8, 9

*Spitzer Mgmt., Inc. v. Interactive Brokers, LLC*,
   2013 WL 6827945 (N.D. Ohio 2013)........................................................................10

*Villarreal v. First Presidio Bank*,
   283 F. Supp. 3d 548 (W.D. Tex. 2017)........................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..................................................................................................2, 3

*Walters v. Blue Cross and Blue Shield of Texas, Inc.*,
   2022 WL 902735 (N.D. Tex. Mar. 28, 2022) .........................................................9, 10

*Zachery v. Texaco Expl. & Prod., Inc.*,
   185 F.R.D. 230 (W.D. Tex. 1999) ...............................................................................4

## Statutes

UCC § 3.418 ............................................................................................................................9

UCC § 3.418(a)........................................................................................................................9

iii

## TABLE OF AUTHORITIES
(*continued*)

Page(s)

UCC § 3.419 ..................................................................................................................8

UCC § 3.420 ..................................................................................................................9

UCC § 4.101 ..................................................................................................................6

UCC § 4.102 ...............................................................................................................6, 9

UCC § 4.105 ..................................................................................................................6

UCC § 4.207 ..................................................................................................................6

UCC § 4.208 ..................................................................................................................6

UCC § 4.302 ..................................................................................................................6

**Rules**

Fed. R. Civ. P. 23(c)(1)(A) ........................................................................................1, 5

Plaintiffs' class-related allegations should be struck pursuant to Rule 23. Plaintiffs' Opposition fails to cite a single case in the Fifth Circuit allowing certification of either a nationwide class or state-specific class asserting fraud claims—let alone the types of check fraud claims raised in their complaint. The lack of any authority is unsurprising. The Fifth Circuit has consistently held that when individualized issues predominate—as they do here—class claims must be struck. Without delay. As Rule 23 instructs, the court "must determine" whether to certify a class "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A).

On the substantive claims, Plaintiffs fail to cite any Fifth Circuit or district court authority allowing the types of claims that Plaintiffs have asserted between banks beyond presentment warranty claims. And every court in the Fifth Circuit to address the question of preemption has held that sections 4.208 and 4.302 of the Texas Uniform Commercial Code ("UCC") preempt any equitable and common-law claims. The Court should grant NFCU's Motion.

## I.    Plaintiffs' Claims Are Not Appropriate for Class Treatment and Should Be Struck.

The absence of Fifth Circuit precedent allowing certification of either a nationwide or Texas class of check fraud claims is dispositive: This "class action cannot be maintained." *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023).

### A.    Individual issues predominate.

Plaintiffs' proposed nationwide and Texas classes cannot be certified because individual issues regarding the alleged fraud overwhelm any common issues of law or fact. Plaintiffs' arguments to the contrary cannot be squared with their factual allegations or controlling case law.

First, Plaintiffs half-heartedly argue this check-fraud case isn't really a fraud case. They insist that just because "NFCU's customers are engaged in fraud [that] does not make Plaintiffs'

1

claims against NFCU 'fraud based.'" Opp. at 15. But Plaintiffs' complaint is littered with allegations of check fraud, *see, e.g.*, SAC ¶¶ 1–3, 24, 27, 41, 51, 63–64, which necessarily entail individualized factual and legal inquiries, all of which will predominate, making them unsuitable for class treatment in this circuit—or elsewhere. *Elson*, 56 F.4th at 1006–07.

As NFCU detailed in its opening Motion, Mot. at 15–17, to resolve each potential claim in this fraud-based class action, the Court would first have to determine whether each individual check at issue was fraudulent in some way (an individualized issue). This would require sorting out whether each check involved unauthorized signatures or endorsements, alterations, potential counterfeits, or theft (another individualized issue). And even if Plaintiffs could prove "in one stroke"[1] that every check they believe should not have been paid did in fact involve some kind of fraud, the Court would then have to resolve—for each check—whether NFCU is liable for the check amount or whether NFCU has an affirmative defense to the particular claim given the circumstances that led to the particular check being paid (yet another individualized issue).

For example, Plaintiffs argue that their complaint alleges no facts implicating the imposter rule defense. Opp. at 18. But NFCU has a right to defend itself against any presentment warranty claim where the individualized facts suggest an imposter induced the drawer to send the check. And while Plaintiffs suggest that different affirmative defenses against different class members does not mean there are individualized issues, they present no authority for this proposition. On the contrary, as NFCU pointed out in its Motion, the Fifth Circuit has previously determined that affirmative defenses can and do lead to individualized issues. *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (rejecting class due to the "predominance of individual issues necessary to decide an affirmative defense"). Plaintiffs cite *Mullen v. Treasure Chest Casino,*

---

[1] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

*LLC*, for the unremarkable proposition that "[t]he existence of different affirmative defenses does not defeat commonality where . . . the defenses arise from the same set of operative facts." Opp. at 18 (citing 186 F.3d 620, 625, 627 (5th Cir. 1999)). But *Mullen* only addressed a single affirmative defense in the context of adequacy. *Mullen*, 186 F.3d at 626. And the court's ruling relied on the fact that the putative class members all suffered from the same harm and that "all of the claims [arose] under federal law." *Id.* at 626–27. Neither is true here.

Second, Plaintiffs' attempt to side-step the Fifth Circuit's command that "variations in state law may swamp any common issues and defeat predominance," *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007), by appending various UCC provisions for all 50 states (Opp. at 16) is hardly the " 'extensive analysis' of state law variations" that the Fifth Circuit requires "to reveal whether [the variations] pose 'insuperable obstacles' " to class certification. *Cole*, 484 F.3d at 724 (citation omitted). Plaintiffs fail to address any of the state-law differences that NFCU identified in its Motion. Mot. at 18–20 (explaining states' differing views on UCC preemption). Instead, they argue they need class discovery, without identifying what discovery is necessary or how such discovery would improve their certification prospects. Opp. at 16–17. Discovery will not cure the variations in state law, and Plaintiffs should not be permitted to tax NFCU's resources in a futile attempt to do so. *Cf. John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (affirming dismissal of class allegations at pleading stage).

Third, Plaintiffs' claims cannot be certified because they implicate different alleged policies. Plaintiffs try to avoid this obstacle by arguing that NFCU's "procedures were inadequate across the board." Opp. at 19. But even if that were true (it is not), what matters is whether any common question has "common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—

3

even in droves . . . . Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."); *see also Elson*, 56 F.4th at 1006) (explaining that the "'commonality' requirement is subsumed under" the predominance inquiry) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)).  Plaintiffs' complaint makes clear the answer is "no"—because Plaintiffs allege the practice or procedure that may have applied to the checks paid by two of the named plaintiffs (Buckholts and Ciera) was different from, and less rigorous than, the "review process" that applied to the check paid by the other named plaintiff (Susser).  SAC ¶ 23.  When faced with similar claims that implicate a company defendant's differing policies or procedures, courts in this circuit reliably hold a class cannot be certified.  *See Zachery v. Texaco Expl. & Prod., Inc.*, 185 F.R.D. 230, 246 (W.D. Tex. 1999); *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766–68 (5th Cir. 2020) (reversing certification where no evidence of uniform policy).

These differing policies also make Plaintiffs' reliance on *Shonaz* misplaced.  There, the court held that the "[p]laintiff ha[d] sufficiently pleaded commonality" because the proposed class included "wheelchair users with qualified mobility disabilities who encountered excessive sloping conditions within the Parking Areas" of the defendant's stores.  *Haynes v. Shonaz Foods, Inc.*, 2025 WL 627525, at *1, *7 (W.D. Tex. Feb. 19, 2025).  The case says nothing about check fraud-based claims like the ones being pressed by Plaintiffs in this case.  Nor does it say anything about the state choice-of-law issues that will "swamp" any common issues in this case.

**B.     Plaintiffs are not adequate class representatives.**

As NFCU argued, a class cannot be certified here because Plaintiffs, three Texas banks, cannot adequately represent a class of "[a]ll banks and bank customers."  Mot. at 5 (alteration in original).  Plaintiffs concede that the class definitions present "allocation issues between banks and customers."  Opp. at 20.  That should end the inquiry.  Plaintiffs' concession proves that their

interests are antagonistic to the interests of absent class members—bank customers and drafters. Plaintiffs are not adequate class representatives. *See Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 480 (5th Cir. 2001).

C.     **The Court need not wait for class certification.**

Instead of addressing the substance of their check fraud claims and the complete absence of authority supporting class certification, Plaintiffs argue that their class claims should be addressed *later*, at the class certification stage. *See*, *e.g.*, Opp. at 16–17. But this timing argument misses the point. The nature of Plaintiffs' claims makes them unsuitable for class treatment, and "it is facially apparent from the pleadings that there is no ascertainable class." *John*, 501 F.3d at 445. The Court need not wait until a later stage to assess Plaintiffs' claims. *Id.* Rule 23 makes clear that the Court "must determine" whether to certify a class "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Plaintiffs have no response to the plain text of Rule 23.

Plaintiffs are not entitled to class discovery to test their claims. The burden on NFCU would be unfair and too great. *Cf. Earl v. Boeing Co.*, 21 F.4th 895, 899 (5th Cir. 2021) ("[T]he proportionality requirement imposed by Federal Rule of Civil Procedure 26(b) would impose far different constraints on discovery by eleven named plaintiffs than it would for classes."). And discovery will not change the fact that individualized issues related to the alleged fraud, variations in state law, and NFCU's policies and defenses will predominate. Nor will discovery magically make Plaintiffs adequate class representatives. Thus, the Court should strike Plaintiffs' class claims now "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); *cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (discussing "in terrorem" effect when claims are "aggregated").

II.     **Plaintiffs Should Only Be Allowed to Pursue Their Presentment Warranty Claims.**

This lawsuit presents three disputes between banks about who bears the loss when a

fraudster deposits a check and that check is subsequently presented for payment by the depositary bank and paid by the drawee bank. In such circumstances, Article 4 of the UCC, which covers "Bank Deposits and Collections," controls—even over Article 3. UCC §§ 4.101, 4.102. Article 4 sets up a specific regime in which the payor bank has until midnight to decide whether to accept a check that has been presented for payment. UCC § 4.302. In exchange for this short review period, the UCC imposes certain warranties from the presenting bank to the payor bank. UCC § 4.208. Every federal court in the Fifth Circuit that has addressed the question has held that this specific regime created by sections 4.208 and 4.302 preempts equitable and common-law claims in the circumstances presented by this case. *See*, *e.g.*, *Cadence Bank v. JPMorgan Chase Bank, N.A.*, 2024 WL 5358446, at *4–6 (S.D. Tex. Dec. 5, 2024), *report and recommendation adopted*, 2025 WL 296147 (S.D. Tex. Jan. 24, 2025); *Southstar Bank, S.S.B. v. JPMorgan Chase Bank, N.A.*, 2025 WL 2052310, at *2 (S.D. Tex. July 22, 2025).

### A.    Plaintiffs do not allege that NFCU transferred the checks at issue.

Plaintiffs do not allege NFCU did anything with the relevant checks other than present them for payment. Under the UCC, "presenting" a check for payment is distinct from "transferring" a check to someone else. That's why the UCC contains distinct warranty provisions associated with presentment versus transferring. *Compare* UCC § 4.208, *with* UCC § 4.207; *see also Cadence Bank*, 2024 WL 5358446, at *7; *Southstar Bank*, 2025 WL 2052310, at *2.

Plaintiffs' arguments to the contrary are not persuasive. First, Plaintiffs admit they are not "collecting banks" for purposes of these transactions. Opp. at 5. That forecloses their transfer warranty claim. Section 4.207 runs to "collecting bank[s]" and section 4.105 excludes "the payor bank" from its definition of "[c]ollecting bank." UCC §§ 4.105, 4.207; *see Cadence Bank*, 2024 WL 5358446, at *7 (concluding that transfer warranty does not run to payor bank). Plaintiffs argue

6

this is irrelevant because they are collecting banks in situations that are inapplicable here. Opp. at 5–6. But UCC section 4.207 uses the phrase "subsequent collecting bank," connecting the term "collecting bank" to the item at issue. It does not authorize any bank that has ever collected to sue under this provision. Banks cannot assert claims based on roles they play regarding items not at issue in this case. What matters is the roles each bank had in the transactions at issue. And Plaintiffs admit that they are "payor banks for purposes of the final payment decision" regarding the checks at issue here. Opp. at 5. So they cannot recover under section 4.207.

Second, Plaintiffs' reading of the UCC violates the rule against surplusage. *See Cadence Bank*, 2024 WL 5358446, at *7. Section 4.208's presentment warranty is more specific and limited than the general transfer warranty described in section 4.207. "If the drawee/payor bank [here, the plaintiff banks] were included within the ambit of those benefitting from the more general transfer warranty set forth in section 4.207, then the presentment warranty of section 4.208 would appear to be surplusage within the statute." *Id.*

Third, Plaintiffs assert—without explanation—that NFCU's reading of the UCC "would create a liability gap where presenting banks could avoid both transfer and presentment warranty obligations." Opp. at 6. Not so. NFCU's position is simply that presenting banks have the presentment warranty obligations in section 4.208 (subject to that section's affirmative defenses).

**B.**    **The UCC has created a comprehensive scheme in which sections 4.208 and 4.302 preempt Plaintiffs' equitable and common-law claims.**

Plaintiffs do not muster a single case contradicting *Cadence Bank*. *See Cadence Bank*, 2024 WL 5358446, *4–6 (holding that equitable and common-law claims are preempted by sections 4.208 and 4.302). Nor can they. Indeed, since NFCU filed its Motion, a second federal district court in the Fifth Circuit agreed that the comprehensive scheme created by sections 4.208 and 4.302 "preempt[s] the common law remedies that [Plaintiffs] invoke when, as here, the issue

7

is the rights and obligations when a bank deposits a fraudulent check and the payor bank sends the funds to the depository bank." *Southstar Bank*, 2025 WL 2052310, at *2.

Rather than distinguishing these cases, Plaintiffs point to the general notion that the common law sometimes supplements the UCC and cites cases addressing separate UCC provisions that allow common-law claims to proceed—so long as they do not conflict with the UCC. But as Plaintiffs concede, this Circuit requires "case-by-case analysis of whether specific common law principles conflict with particular UCC provisions." Opp. at 7. Every case from this circuit addressing sections 4.208 and 4.302 has held that they preempt equitable and common-law claims. *Cadence Bank*, 2024 WL 5358446, *4–6; *Southstar Bank*, 2025 WL 2052310, at *2.[2]

Plaintiffs try to dismiss *Cadence Bank* as a case about "wire transfers and ACH payments." Opp. at 6. But "Cadence Bank alleged that the '*[c]heck* was fraudulent and/or altered.'" *Cadence Bank*, 2024 WL 5358446 at *2 (emphasis added) (citation omitted). The court's decision in that case was based on Articles 3 and 4 of the UCC (checks), not Article 4A (wire transfers). *Cadence Bank* held the relevant UCC provisions preempt equitable and common-law claims in nearly identical factual circumstances. *Id.* at *2, *4–6. *Southstar Bank* confirms *Cadence Bank* is no outlier. This Court should not stray from these persuasive authorities.

Plaintiffs try to carve their money-had-and-received claim out of preemption by citing UCC section 3.118. Opp. at 7–9. But UCC section 3.420 prohibits such claims if brought by the acceptor—here, the plaintiff Banks. UCC § 3.420. So section 3.118 is of no moment.

---

[2] Plaintiffs cite four cases to support their preemption argument, Opp. at 9–11, but none address section 4.208 or section 4.302. *See Peerless Ins. Co. v. Tex. Com. Bank-New Braunfels, N.A.*, 791 F.2d 1177, 1178 (5th Cir. 1986) (UCC § 3.419); *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 502 (5th Cir. 2014) (UCC § 3.405); *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 780 (E.D. Tex. 2008) (federal preemption of state law); *Villarreal v. First Presidio Bank*, 283 F. Supp. 3d 548, 554 (W.D. Tex. 2017) (explaining that there must be "a conflict with a particular provision").

Similarly, Plaintiffs have no claim under section 3.418. That statute only explicitly covers scenarios in which (1) the drawee bank (Plaintiffs here) mistakenly believed that there was not a stop order on the check; or (2) the drawee bank mistakenly believed that the drawer's signature was authorized. UCC § 3.418(a). But even if this section did authorize equitable or common-law claims, Article 4 controls where, as here, there is a conflict between Article 3's broader scope and the careful scheme set up by Article 4. *See* UCC § 4.102 (when "there is conflict, [Article 4] governs Article 3"). Furthermore, the statute makes clear that the right of recovery is against "the person to whom or for whose benefit payment was made." UCC § 3.418. In other words, even if section 3.418 applied in the present circumstances, Plaintiffs' right of recovery is against the fraudsters—not NFCU. *Southstar Bank*, 2025 WL 2052310, at *2–3.

Plaintiffs' breach of contract claim is also preempted. *Am. Dream Team, Inc. v. Citizens State Bank*, 481 S.W.3d 725, 732 (Tex. App.—Tyler 2015, pet. denied). *1/2 Price Checks* does not hold otherwise. That case only involved a UCC claim against the drawer of a dishonored check under section 3.414(b). *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382–84 (Tex. 2011). The Court simply held that attorneys' fees are available under such UCC claims because they are like a "claim on a contract." *Id.* at 381, 392. That case *does not* hold that breach of contract claims survive the UCC's preemption of state-law claims regarding check transactions.

**C.      Plaintiffs cannot enforce federal banking laws and regulations.**

Plaintiffs' negligence claim is preempted by the comprehensive scheme created by UCC sections 4.208 and 4.302. But even if those claims were not preempted, Plaintiffs cannot use the Bank Secrecy Act ("BSA"), Anti-Money Laundering ("AML"), and "Know Your Customer" ("KYC") regulations to bootstrap a negligence-per-se claim. *Walters v. Blue Cross and Blue Shield of Tex., Inc.*, 2022 WL 902735, at *5–6 (N.D. Tex. Mar. 28, 2022) ("[A] statute is not an appropriate basis for a negligence-per-se claim when 'a legislative body declines to provide for an individual

9

private right of action.'") (citation omitted); *Smith v. Merritt*, 940 S.W.2d 602, 607–08 (Tex. 1997) (similar).

Plaintiffs concede that they are not bringing actions under those laws and regulations. Opp. at 12. Nor could they. BSA, AML, and KYC do not create a private right of action. *See*, *e.g.*, *Hunter v. Navy Fed. Credit Union*, 2024 WL 3094610, at \*5–6 (N.D. Tex. June 20, 2024) (no private right of action under the BSA); *Spitzer Mgmt., Inc. v. Interactive Brokers, LLC*, 2013 WL 6827945, at \*2 (N.D. Ohio Dec. 20, 2013) (no private right of action under the BSA or Patriot Act). Plaintiffs' concession bars them from bringing a negligence claim based on these laws and regulations. *Walters*, 2022 WL 902735, at \*5–6. Nor can Plaintiffs back-door these allegations as a duty of care for a negligence action. *Perales* does not hold otherwise. *See Perales v. First Am. Bank Tex., SSB*, 2001 LEXIS 13977, at \*17–18 (N.D. Tex. 2001). That case only considered federal wire transfer laws and regulations to assist in determining a breach of contract claim that involved a wire transfer. *Id.* The provision the court relied on, section 4.103(c), does not create a statutory cause of action or authorize negligence suits based on federal laws and regulations.[3]

Because Plaintiffs cite no case within the Fifth Circuit certifying a class based on check fraud and because individualized issues facially predominate, Plaintiffs' class allegations must be struck. Plaintiffs' similar failure to cite a Fifth Circuit case authorizing equitable and common-law claims to proceed in a dispute between banks under sections 4.208 and 4.302, dooms all but their UCC presentment warranty claim. The Court should strike Plaintiffs' class allegations and dismiss Plaintiffs' claims with prejudice (other than the section 4.208 presentment warranty claim).

---

[3] In the alternative, Plaintiffs insist that they can plead additional facts to survive a motion to dismiss if given a fourth opportunity. Opp. at 13–14. But it is *legal* insufficiencies, not just *factual* deficiencies, that doom Plaintiffs' claims. No further facts could overcome those legal barriers. Any further amendment would be futile. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378–79 (5th Cir. 2014); *Rutledge v. United States*, 161 F.3d 7 (5th Cir. 1998).

10

DATED:  September 5, 2025          Respectfully submitted,


/s/ Andrew LeGrand

Andrew P. LeGrand
  Texas Bar No. 24070132
  ALeGrand@gibsondunn.com
Mike Lyons
  Texas Bar No. 24071169
  MLyons@gibsondunn.com
Emily Cardone
  Texas Bar No. 24116592
  ECardone@gibsondunn.com
Noah J. Frazier
  Texas Bar No. 24138680
  NFrazier@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  214.698.3100
Facsimile:  214.571.2900

*Counsel for Navy Federal Credit Union*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

/s/ *Andrew LeGrand*