## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | | |
|---|---|---|
| BUCKHOLTS STATE BANK, SUSSER BANK, AND CIERA BANK, on behalf of itself and all others similarly situated, | § § § § | |
| *Plaintiffs* | § § § | |
| V. | § § | Case No. 1-25-cv-00052 |
| NAVY FEDERAL CREDIT UNION | § § § | |
| *Defendant.* | § § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MARCH 20, 2026 MOTION TO DISMISS UNDER RULE 12(B)(6) AND MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 23

# TABLE OF CONTENTS

I      SUMMARY OF THE ARGUMENT ...................................................................................1

II     STATEMENT OF FACTS ............................................................................................2

III    LEGAL STANDARD...................................................................................................3

    A.   Rule 12(b)(6) Standard. .................................................................................... 3

    B.   Rule 23 Motion to Strike Standard and *Haynes v. Shonaz Foods* Holding ........................ 3

IV    ARGUMENT................................................................................................................4

    A.   Virginia Law Applies Under UCC § 4.102(b)..................................................... 4

    B.   UCC § 4-208 is not Plaintiffs' only viable cause of action. ............................... 6

    C.   Plaintiffs' Texas Common Law Breach of Contract Claim is Not Preempted. ................... 8

    D.   The UCC Explicitly Allows for Money Had and Received and Unjust Enrichment Common Law Claims....................................................................................... 11

    E.   Plaintiffs' Negligence Claim Can Proceed Alongside Their UCC Claims...................... 13

    F.   The Economic Loss Rule Does Not Bar Plaintiffs' Negligence Claims .......................... 15

    G.   Plaintiffs Do Not Assert Direct Claims Under BSA/AML/KYC Regulations................. 16

    H.   In the Alternative to a Dismissal With Prejudice, Plaintiffs Should be Allowed to Conduct Some Limited Discovery and Amend Their Complaint Thereafter. ....................................... 17

    I.   Because Plaintiffs' Proposed Class is Ascertainable from the Pleadings, NFCU's Motion to Strike Should be Denied as Premature................................................................. 17

    J.   Issues Involving Commonality, Predominance, and Adequacy of Representation Are Also Premature and Should be Addressed at the Class Certification Stage. ................................... 19

    K.   Common Issues Predominate Despite Variations in Fraud Types.................................... 20

    L.   NFCU's Variable Policies Support Class Certification...................................... 22

    M.   There Are Not Conflicting Interests Between Banks and Bank Customers ..................... 24

V     CONCLUSION.........................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*1/2 Price Checks Cashed v. United Auto. Ins. Co.*,
344 S.W.3d 378 (Tex. 2011) .............................................................................. 7, 8

*Abi-Najm v. Concord Condominium, LLC,*
280 Va. 350 S.E.2d 483 (2010) ............................................................................. 14

*Am. Airlines Employees Fed. Credit Union v. Martin,*
29 S.W.3d 86, 92 (Tex. 2000) ............................................................................... 17

*American Dream Team,*
481 S.W.3d 725, 732 (Tex. App.—Tyler 2015, pet. denied) ................................. 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................. 3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................. 3

*Cadence Bank v. JPMorgan Chase Bank,*
2024 WL 5358446, at *6 ...................................................................................... 8, 9

*Casso's Wellness Store & Gym, LLC v. Spectrum Lab. Prods., Inc.,*
2018 WL 1377608, at *6 (E.D. La. Mar. 19, 2018) ............................................... 4

*Coastal Agric. Supply, Inc. v. JP Morgan Navy Federal Credit Union Bank, N.A.,*
759 F.3d 498 (5th Cir. 2014) ............................................................................... 8, 9

*Crowe v. Henry,*
43 F.3d 198 (5th Cir. 1995) ..................................................................................... 3

*Delarue v. State Farm Lloyds,*
No. 1:09-CV-237, 2010 WL 11530499, at *1 (E.D. Tex. Mar. 10, 2010) ............. 4

*Dunn Construction Co. v. Cloney,*
278 Va. 260, 682 S.E.2d 943 (2009) ...................................................................... 4

*Eberhardt v. Fairfax Cty. Emps. Ret. Sys. Bd. of Trs.*,
721 S.E.2d 524 (2012).............................................................................................. 13

*Elson v. Black,*
56 F.4th 1002 (5th Cir. 2023) ..................................................................... 16, 17, 18

*Flecha v. Medicredit, Inc.*
946 F.3d 762 (5th Cir. 2020) ................................................................................... 22

*Frey v. First Nat. Bank Sw.,*
  602 Fed. Appx. 164 (5th Cir. 2015)........................................................................ 16

*Gregson v. Zurich Am. Ins. Co.,*
  322 F.3d 883 (5th Cir. 2003) ................................................................................... 3

*Guzman v. Bridgepoint Educ., Inc.,*
  No. 11CV69 WQH WVG, 2013 WL 593431, at *7 (S.D. Cal. Feb. 13, 2013) ................... 17

*Haynes v. Shonaz Foods, Inc.,*
  No. 1:24-CV-407-RP, 2025 WL 627525, (W.D. Tex. Feb. 19, 2025) (Pitman, J.)... 4, 16, 18,
  22

*In re Heartland Payment Sys.,*
  851 F. Supp. 2d 1040 (S.D. Tex. 2012)................................................................... 19

*John v. Nat'l Sec. Fire & Cas. Co.,*
  501 F.3d 443 (5th Cir. 2007). ................................................................. 3, 16, 18, 22

*Kaltman v. All Am. Pest Control, Inc.,*
  281 Va. 483, 493, 706 S.E.2d 864, 870 (2011) ...................................................... 15

*Mackey v. McDannald,*
  298 Va. 645 S.E.2d 379 (2020) .............................................................................. 10

*Mancini v. Ins. Corp.,*
  No. 07cv1750–L(NLS), 2008 U.S. Dist. LEXIS 43954, at 9–10 (S.D.Cal. May 29,
  2008) ........................................................................................................................ 17

*Marslender v. Va. Elec. & Power Co.,*
  37 Va. Cir. 199, 200-201 (Cir. Ct. 1995)............................................................... 15

*Milligan v. Cedars Leasing Co., LLC,*
  Civil Action No. 3:24-cv-00061, 2025 U.S. Dist. LEXIS 137534, at *15 (W.D. Va.
  2025) ........................................................................................................................ 15

*Mills v. Warner-Lambert Co.,*
  581 F.Supp.2d 772 (E.D. Tex. 2008)....................................................................... 9

*Mullen v. Treasure Chest Casino, L.L.C.,*
  186 F.3d 620 (5th Cir. 1999) ....................................................................... 19, 20, 21, 22

*Navy Fed. Credit Union v. Lentz*
  890 S.E.2d 827 (Va. Ct. App. 2023)....................................................................... 13

*Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A.,*
  791 F.2d 1177 (5th Cir. 1986) ............................................................................. 8, 9

*Perales v. First Am. Bank Tex., SSB*,
  Civil Action No. 1:00-CV-278-C, 2001 U.S. Dist. LEXIS 13977, at *17 (N.D. Tex. 2001) ..................................................................................................................... 15

*Putnam Rolling Ladder Co., Inc. v. Manufacturers Hanover Tr. Co.*,
  74 N.Y.2d 340 N.E.2d 904 (1989) ...................................................................... 17

*Republican Party v. Martin*,
  980 F.2d 943 (4th Cir. 1992) ............................................................................ 3, 5

*Resolution Tr. Corp. v. Rupert Hays*,
  No. SA-92-CA-0653, 1993 U.S. Dist. LEXIS 21767, at *16 (W.D. Tex. 1993) ................ 15

*Schlegel v. Bank of America*,
  271 Va. 542 S.E.2d 362 (2006) ..................................................................... 11, 13

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*,
  236 Va. 419 S.E.2d 55 (1988) ............................................................................ 14

*Skinner v. Switzer*,
  562 U.S. 521 (2011) ........................................................................................ 3, 12

*State of Qatar v. First Am. Bank of Va.*,
  880 F. Supp. 463 (E.D. Va. 1995) ...................................................................... 10

*Sun 'n Sand, Inc. v. United California Bank*,
  582 P.2d 920 (Ca. 1978) ............................................................................... 13, 14

*Sw. Bank v. Info. Support Concepts, Inc.*,
  149 S.W.3d 104 (Tex. 2004) .............................................................................. 17

**Statutes**
N.Y. U.C.C. Law § 4-207 (McKinney) ................................................................. 18

Tex. Bus. & Com. Code § 1.103 ............................................................................. 8

UCC § 1-103 .................................................................................................... 1,10

UCC § 3.118 .................................................................................................... 1,11

UCC § 3.404 ......................................................................................................... 21

UCC § 3.405 ......................................................................................................... 21

UCC § 3.406 ............................................................................................... 1, 13, 21

UCC § 3.416 ........................................................................................................ 5, 6

UCC § 4.102 ....................................................................................................... 4, 5

UCC § 4.105 .......................................................................................................... 5

UCC § 4.207 ..................................................................................... 1, 5, 6, 8, 17, 18

UCC § 4.208 ..................................................................................... 1, 6, 8, 12, 17, 18

UCC § 4.302 ........................................................................................................ 11

UCC § 4.401 ........................................................................................................ 23

UCC § 4.406 ........................................................................................................ 21

Tex. Bus. & Com. Code Ann. § 1.102 ..................................................................... 4

Tex. Bus. & Com. Code Ann. § 1.103 ..................................................................... 8

Va. Code Ann. § 8.4-102 ......................................................................... 4, 5, 12, 13

Va. Code Ann. § 8.1A-103 ................................................................................... 11

Va. Code Ann. § 8.4-105 ....................................................................................... 5

Va. Code Ann. § 8.3A-118 ............................................................................... 1, 11

Va. Code Ann. § 8.4-207 .................................................................... 1, 5, 6, 7, 8, 12

Va. Code Ann. § 8.4-401 ..................................................................................... 23

Va. Code Ann. § 8.3A-406 ............................................................................ 1, 13, 14

Va. Code Ann. § 8.3A-416 ..................................................................................... 5

Va. Code Ann. § 8.3A-417 ..................................................................................... 5

**Rules**
Fed. R. Civ. P.(12)(b)(6) .................................................................................... 1, 3

Fed. R. Civ. P. 23 .......................................................................................... 1, 2, 3, 19

Tex. R. Civ. P. 202 .............................................................................................. 3

W.D. Tex. Local Rule CV-7(f). ........................................................................... 23

Plaintiffs, Buckholts State Bank ("Buckholts"), Susser Bank ("Susser"), and Ciera Bank ("Ciera") (collectively "Plaintiffs"), file this Response to Defendant, Navy Federal Credit Union's ("NFCU" or "Defendant") Motions to Dismiss and Strike. Dkt. No. 45 ("NFCU's Motion"). In support thereof, Plaintiffs demonstrate how Defendant fails to set forth any legitimate grounds for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs also show that NFCU's motion to strike under Fed. R. Civ. P. 23 should be denied as premature at the pleadings stage.

## I    Summary of the Argument

This Court should deny NFCU's Motion to Dismiss because its argument that UCC § 4.208, codified in Va. Code Ann. § 8.4-207.2, is Plaintiffs' only applicable UCC claim ignores the plain language of UCC § 4.207, codified in Va. Code Ann. § 8.4-207.1. NFCU also erroneously assumes that the Uniform Commercial Code ("UCC") entirely displaces the following common law claims: (1) breach of contract under Texas common law; (2) money had and received brought under Virginia common law; (3) unjust enrichment under Virgina common law; and (4) negligence under Virginia's UCC § 3-406, codified in Va. Code Ann. § 8.3A-406. While the UCC governs most aspects of the check collection and loss allocation scheme, it expressly provides that common law and equitable remedies supplement its provisions unless directly displaced. Here, whether under the UCC or common law, NFCU is trying to keep stolen funds. As explained below, Plaintiffs' common law claims are not inconsistent with the UCC. In fact, the UCC recognizes, and therefore cannot preempt, a UCC § 3.118(g) claim or "like" claims. *See* Va. Code Ann. § 8.3A-118(g) (permitting a common law money had and received claim).

This case involves legitimate checks issued by Plaintiffs' customers. The checks were placed in the U.S. Mail, stolen, altered (or fraudulently endorsed), and deposited into fraudulently opened Business Accounts at NFCU. NFCU permitted check fraud to occur when it allowed its customers to open Business Accounts and then to deposit stolen checks that appear to have been

altered and/or contain fraudulent or missing endorsements. Plaintiffs have reimbursed their customers for the losses and seek to recover those funds from NFCU.

NFCU's arguments, if successful, would allow banks to forever keep funds stolen via check fraud if those checks are not returned within 24 hours. NFCU provides no explanation as to how victims of such fraud can recover stolen funds under its interpretation of the UCC.

Moreover, NFCU's interpretations are contrary to the objectives of the UCC. The public policy behind the UCC framework for allocating losses—that the party in the best position to prevent the loss should bear the loss—still holds true today. In this situation, NFCU, as the depositary financial institution, is in the best position to prevent the loss. NFCU's actions or inactions in setting policies, practices and procedures for its branches facilitate check fraud losses, and they should be held accountable. NFCU's Motion to Dismiss should therefore be denied.

NFCU's Motion to Strike is premature. Courts rarely grant motions to strike class allegations before discovery has commenced ***and*** before a Rule 23 motion for class certification is filed. Because Plaintiffs' class is ascertainable from its Third Amended Complaint, NFCU's Motion to Strike is no exception to this general rule. NFCU's assertions regarding commonality, predominance, and adequacy of representation are likewise premature and should be addressed at the class certification stage. Thus, NFCU's Motion to Strike should also be denied.

## II  Statement of Facts

Plaintiffs incorporate by reference the factual allegations in their Third Amended Class Action Complaint ("**TAC**") regarding the Checks at issue and NFCU's grossly inadequate policies, practices, and procedures regarding check fraud prevention, including for the opening of Business Accounts. *See* Dkt. No. 39 (TAC) at 1–7.[1]

---

[1] The Buckholts, Susser, and Ciera checks described in Plaintiffs' Third Amended Class Action Complaint are hereinafter collectively referred to as the "**Checks**".

<h3 style="text-align:center">III Legal Standard</h3>

**A. Rule 12(b)(6) Standard.**

The purpose of a Rule 12(b)(6) motion to dismiss is to test the formal sufficiency of the plaintiff's statement of its claim for relief.[2] In considering this Motion, the Court must "accept all factual allegations in the [complaint] as true" and must "draw all reasonable inferences in [Plaintiffs'] favor."[3] And "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."[4]

A Rule 12(b)(6) motion to dismiss is appropriate only if a plaintiff did not provide fair notice of the claim and did not provide sufficient factual allegations that—if accepted as true—fails to demonstrate a plausible claim for relief.[5] Further, a Rule 12(b)(6) motion cannot be used to resolve factual issues or the merits of a case.[6] The essential question in a Rule 12(b)(6) motion is whether the plaintiff is entitled to any relief based on the factual allegations raised in the complaint.[7] The issue is not whether the plaintiff will ultimately prevail, but whether there is sufficient factual material to entitle the plaintiff to relief above mere speculation.[8].

**B. Rule 23 Motion to Strike Standard and *Haynes v. Shonaz Foods* Holding.**

NFCU moves to strike Plaintiffs' class allegations prior to answering Plaintiffs' TAC, prior to the commencement of discovery *in this federal court action*, and before a motion for class certification has been filed.[9] In this context, a court may strike class action allegations only "[w]here it is facially apparent from the pleadings that there is no ascertainable class." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

---

[2] *See Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).
[3] *Id.*
[4] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[6] *See Republican Party*, 980 F.2d at 952.
[7] *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).
[8] *See Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011); *Twombly*, 550 U.S. at 555-56.
[9] As referenced in the TAC, Plaintiffs conducted pre-suit depositions of NFCU's corporate representatives and received some (albeit grossly inadequate) documentation under Texas Rule of Civil Procedure 202. *See* TAC at 2.

Approximately fourteen (14) months ago, this Court denied a motion to strike class allegations as premature. *See Haynes v. Shonaz Foods, Inc.,* No. 1:24-CV-407-RP, 2025 WL 627525, at \*1, \*8 (W.D. Tex. Feb. 19, 2025) (Pitman, J.) ("Because courts should rarely grant motions to strike class allegations before discovery has commenced, and for the same reasons the Court denied Defendant's motion to dismiss, the Court denies the motion to strike Plaintiff's class allegations."). Specifically, in *Haynes v. Shonaz Foods, Inc.* the plaintiff brought an American Disabilities Act claim on behalf of himself and the following putative class:

> All wheelchair users with qualified mobility disabilities who encountered excessive sloping conditions within the Parking Areas of any Shonaz Foods, Inc. and DOES 1 to 25 location.

*Id.* \*1. Relying on the fact that courts often deny motions to strike at the pleadings stage and only in "rare cases" grant such motions, this Court held that the defendant's motion was premature. *Id.* at \*6.[10] The same logic applies in this case, and, therefore, NFCU's Motion to Strike Plaintiffs' Class Allegations should be denied.

### IV Argument

#### A. Virginia Law Applies Under UCC § 4.102(b).

NFCU first argues that Plaintiffs' choice of law analysis under UCC § 4.102(b) is incorrect, asserting the governing law is limited to the state where the Checks at issue were deposited. NFCU's Motion at 7. NFCU's reading is both off point regarding Plaintiffs' allegations in the TAC and too narrow UCC § 4.102(b).[11]

The first part of UCC § 4.102(b) provides the "liability of a bank for action or non-action with respect to an item handled by it for purposes of presentment, payment, or collection is

---

[10] *See also Delarue v. State Farm Lloyds,* No. 1:09-CV-237, 2010 WL 11530499, at \*1, \*5 (E.D. Tex. Mar. 10, 2010) (denying motion to strike class allegations at the pleadings stage as premature where defendant "has not answered, discovery has not commenced" and "no motion for class certification has been filed."); *Casso's Wellness Store & Gym, LLC v. Spectrum Lab. Prods., Inc.*, 2018 WL 1377608, at \*6 (E.D. La. Mar. 19, 2018) (denying motion to strike as premature because discovery had not commenced and plaintiff had not yet sought class certification).

[11] UCC § 4.102(b) is codified in Virginia as Va. Code Ann. § 8.4-102(b) and in Texas as Texas Business and Commerce Code Ann. § 4.102(b).

governed by the law of the place where the bank is located." Plaintiffs have alleged that "NFCU's policies, practices and procedures regarding liability determining actions and non-actions described in this Complaint, such as standards for opening Business Accounts, check fraud review, and denial of claims from innocent downstream banks, were set by, approved or ratified at NFCU's headquarters in Virginia, and applied uniformly across NFCU's nationwide operations." *See* TAC at ¶ 8. Thus, the relevant action or non-action was not at various NFCU branches, as suggested by Defendant focusing only on the second part of UCC § 4.102(b), but the decisions emanating from NFCU headquarters in Virgina that were merely followed at NFCU branch offices. *Id.* ¶¶ 1, 8, 12-14, 16-20, 36(a), 70, and 75.

In addition, Comment C to UCC § 4.102(b) states that the "phrase '**action or non-action with respect to any item handled** by it for purposes of presentment, payment, or collection' is intended to make the conflicts rule of subsection (b) apply from the inception of the collection process of an item through **all phases of deposit, forwarding, presentment, payment and remittance or credit of proceeds**." UCC § 4.102(b), cmt. c (emphasis added); *see also* Va. Code Ann. § 8.4-102(b), cmt. c (identical to UCC 4.102(b), cmt. c)). Here, Plaintiffs allege that NFCU's decision to deny Plaintiffs' reimbursement claims originated from its corporate headquarters in Virginia. *See* TAC at ¶¶ 1–3, 28–29; *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("We must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff."). NFCU's denial constitutes a Virginia–based "non-action" (not returning stolen funds) applying to the "collection" and "presentment" of items handled by various NFCU branches. Specifically, the $16,575.90 Buckholts check, the $26,407.44 Cierra

check, and the $9,661.52 Susser check.[12] *See* TAC at ¶¶ 3–4, 25. Accordingly, Virginia law applies to Plaintiffs' UCC–based claims.

### B. UCC § 4-208 is not Plaintiffs' only viable cause of action.

NFCU next argues that claims under UCC § 4-208, codified in Va. Code Ann. § 8.4-207.2, is the only viable cause of action in the TAC. NFCU's Motion at 10. In doing do, NFCU appears to argue that UCC transfer and presentment warranties are mutually exclusive. However, a defendant like NFCU can be liable under both. A transfer warranty under UCC § 4-207, codified in Va. Code Ann. § 8.4-207.1, provides that "[a] customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank . . . ."[13] A "collecting bank" is "a bank handling an item for collection except the payor bank."[14] Under UCC § 3-416, codified in Va. Code Ann. § 8.3A-416, "[a] person who transfers an instrument for consideration warrants to the transferee . . . ."[15] A presentment warranty under UCC § 3-417, codified in Va. Code Ann. § 8.3A-417(a), provides that "the person obtaining payment . . . warrant[s] to the drawee . . . ."[16]

Here, Plaintiffs are the payor banks and NFCU is the depositary financial institution. Under a plain reading of the UCC, NFCU is a "collecting bank that transfer[red] an item and receive[d] a settlement . . . ."[17] NFCU also transferred each check for consideration, namely payment for the check, creating a transfer warranty. In addition, NFCU obtained payment for each check under the presentment warranty. Accordingly, NFCU owed both transfer and presentment warranties to Plaintiffs.

---

[12] For purposes of this Response only, and solely for the sake of argument, Plaintiffs will assume that the Duncanville, Texas; Sandy Springs, Georgia; and Raleigh, North Carolina branches identified in Defendant's Motion are accurate. *See* NFCU Mot. at 8. Plaintiffs have not yet had an opportunity to conduct discovery regarding these allegations.
[13] UCC § 4-207(a); Va. Code Ann. § 8.4-207.1.
[14] UCC § 4-105(5); Va. Code Ann. § 8.4-105(5).
[15] UCC § 3-416; Va. Code Ann. § 8.3A-416.
[16] UCC §§ 3-417(a), Va. Code Ann. § 8.3A-417(a).
[17] UCC § 4-207(a); Va. Code Ann. § 8.4-207.1.

NFCU's parsing of the UCC is both legally incorrect and factually unsupported. First, regarding UCC § 3-418, NFCU incorrectly limits this section to check stoppage and drawer signature issues. NFCU's Motion at 10. Section 3-418, codified in Va. Code Ann. § 8.3A-418, permits recovery by a drawee bank that pays an instrument under the mistaken belief that payment was authorized.[18] Here, Plaintiffs paid the Checks under the mistaken belief that NFCU had proper authority to present them for payment. The fraud by NFCU's customers—whether involving endorsements or alterations—directly bears on whether NFCU was authorized to obtain payment.

Second, NFCU's argument that it was not a "transferor" under UCC Sections 4-207 and 3-416 ignores the plain language of these provisions. NFCU's Motion at 11. UCC § 3-203, codified in Va. Code 203, defines03, defines "transfer" broadly as delivery "for the purpose of giving to the person receiving delivery the right to enforce the instrument."[19] NFCU received the checks from its depositing customers and transferred them through the clearing system to Plaintiffs, giving Plaintiffs the right (and obligation) to honor them. This constitutes a transfer within the UCC's definition.

Third, NFCU's claim that Plaintiffs are not "collecting banks" misconstrues the UCC's structure. While Plaintiffs are payor banks for purposes of the final payment decision, they also function as collecting banks within the broader clearing system. More specifically, UCC § 4-207 extends transfer warranties not just to collecting banks but to "any subsequent collecting bank," which encompasses payor banks in the clearing chain.[20] NFCU's restrictive interpretation would create a liability gap where presenting banks could avoid both transfer and presentment warranty obligations—a result contrary to the UCC's comprehensive loss allocation scheme.

---

[18] UCC § 3-418; Va. Code Ann. § 8.3A-418.
[19] UCC § 3-203; Va. Code Ann. § 8.3A-203
[20] Va. Code Ann. § 8.4-207.1.

**C. Plaintiffs' Texas Common Law Breach of Contract Claim is Not Preempted.**

Next, NFCU argues that Plaintiffs are prohibited from bringing breach of contract claims. NFCU's Motion at 11. However, NFCU's argument ignores the Texas Supreme Court's ruling that checks themselves create contractual relationships—a check is a formal contract.[21] Because Plaintiffs' breach of contract claim arises directly from this contractual relationship—not from some external common law duty—breach of contract claims based on improper check presentment are not preempted by UCC warranty provisions.

Plaintiffs' breach of contract claim is premised on this longstanding principle.[22] When NFCU presented the Checks for payment to Plaintiffs, it made an order for payment and promise that the checks were properly payable. NFCU represented it had a right to enforce the contract created by the Checks when it transferred and presented the Checks to Plaintiffs. NFCU breached the contract, as it received the funds from the Checks when it was not a proper party to enforce each of the fraudulent items. *See* TAC at ¶ 86; *½ Price Checks Cashed v. United Automobile Insurance Co.*, 344 S.W.3d 378, 386 (Tex. 2011) ("Because the check itself is the contract, it embodies the full agreement between the parties…."). Therefore, Plaintiffs are entitled to bring a common law action for breach of contract based on improper presentment of the fraudulent Checks.

Next, NFCU's reliance on *American Dream Team*, 481 S.W.3d 725, 732 (Tex. App.—Tyler 2015, pet. denied) and *Cadence Bank v. JPMorgan Chase Bank*, 2024 WL 5358446, at *6, is misplaced for several reasons. First, *American Dream Team* involved a claim directly governed by a specific UCC provision (chargeback under UCC § 4.214, codified in Texas Business & Commerce Code § 4.214) where the breach of contract claim conflicted with the statutory

---

[21] *See 1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 383-84 (Tex. 2011). NFCU's argument that breach of contract claims are preempted by the UCC is directly contradicted by Texas Supreme Court caselaw.
[22] *See id.* at 387 (discussing the historical treatment of checks as contracts).

allocation of responsibility regarding chargebacks. *Id*. at 732. Here, by contrast, Plaintiffs' claims are materially different. Rather than implicating a single UCC provision, Plaintiffs' claims apply to multiple provisions that govern different parts of the check collection process. These include presentment warranties under UCC § 4-208 (codified in Va. Code Ann. § 8.4-207.2) and transfer warranties under UCC § 4-207 (codified in Va. Code Ann. § 8.4-207.1). *See ½ Price Checks Cashed,* 344 S.W.3d at 387 ("Indeed, the UCC explicitly provides that it is to be supplemented by principles of law, including the law merchant and the law relative to capacity to contract, unless displaced by the UCC's specific provisions.").

Plaintiffs' breach of contract claim also does not seek to displace a specific UCC allocation of loss. Instead, it is based on NFCU's independent contractual liability arising from its receipt of funds that were not supposed to go to NFCU. The Texas UCC expressly provides that common-law and contractual principles may supplement its provisions unless displaced. *See id*; Tex. Bus. & Com. Code Ann. § 1.103(b). The Fifth Circuit has held even an **outright conflict** between a common law claim and the provisions of the UCC was insufficient to displace a common law claim.[23] Case law on these issues confirms that the UCC does not allow for "any inconsistencies and conflicts [to] provide a license to throw the clean baby out with the dirty bathwater."[24] Texas courts have understood that when it "is not clear from the text that Congress intended to supersede State law (including State common law duties) there is a <u>presumption against preemption</u>."[25] "Both the Texas Supreme Court and [the Fifth Circuit Court of Appeals] have recognized situations where instead of displacing common law altogether, the UCC modifies the common law."[26]

---

[23] *Coastal Agric. Supply, Inc. v. JP Morgan Navy Federal Credit Union Bank, N.A.*, 759 F.3d 498, 508 (5th Cir. 2014).
[24] *Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A.*, 791 F.2d 1177, 1180 (5th Cir. 1986).
[25] *Mills v. Warner-Lambert Co.*, 581 F.Supp.2d 772, 780 (E.D. Tex. 2008) (emphasis added).
[26] *Coastal Agric. Supply, Inc. v. JP Morgan Navy Federal Credit Union Bank, N.A.*, 759 F.3d 498, 507 (5th Cir. 2014).

Second, *Cadence Bank* involved different factual circumstances where the disputed transactions involved wire transfers and ACH payments, not the check fraud at issue here.[27] The court's displacement analysis was specific to those transaction types and does not control the present case. Even under *Cadence Bank*'s framework, displacement occurs only when common law claims would "conflict with, and not merely supplement" UCC provisions.[28] Here, Plaintiffs' claims supplement rather than conflict with UCC warranty provisions by providing additional remedies for the same underlying misconduct. The UCC's warranty scheme addresses NFCU's representations about the checks' validity, while Plaintiffs' common law claims address NFCU's independent duties to follow reasonable banking practices. Also, *Cadence Bank*'s holding is inconsistent with established Fifth Circuit precedent holding that even outright conflicts between common law and UCC provisions do not automatically require displacement.[29] The *Cadence Bank* court's broader displacement theory cannot override binding Circuit precedent requiring case-by-case analysis of whether specific common law principles conflict with particular UCC provisions.

Additionally, after learning of *Cadence Bank* and *SouthStar Bank, S.S.B. v. JPMorgan Chase Bank, N.A.*, No. 24-CV-4593, 2025 WL 2052310 (S.D. Tex. July 22, 2025),[30] the Texas UCC Committee, who drafted the very statute used by Texas for its UCC, issued an official Comment in 2025 to confirm that these courts incorrectly analyzed the UCC and incorrectly decided the cases. *See* Pls.' Notice of Supp. Authority, Ex. A (Dkt 37-1). Indeed, the UCC

---

[27] *Cadence Bank v. JPMorgan Chase Bank, N.A.*, 2024 WL 5358446, at *2, *5–6 (S.D. Tex. Dec. 5, 2024), *report and recommendation adopted*, 2025 WL 296147 (S.D. Tex. Jan. 24, 2025).
[28] *Id.*
[29] *Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A.*, 791 F.2d 1177, 1179-81 (5th Cir. 1986); *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 507-08 (5th Cir. 2014).
[30] A Motion to Reconsider is currently pending in the *SouthStar* case.

Committee clarified that common law claims like unjust enrichment are not preempted and should be allowed to pursue check fraud losses in these types of situations. *Id.*[31]

### D. The UCC Explicitly Allows for Money Had and Received and Unjust Enrichment Common Law Claims.

NFCU argues that Plaintiffs' claims for unjust enrichment and money had and received are preempted by the UCC. NFCU's Motion at 13. However, Plaintiffs' money had and received claim and conversion claims are specifically incorporated into the UCC, and therefore, cannot be preempted by the UCC. Similarly, "like" actions, such as unjust enrichment, are specifically allowed under the UCC. Three sources of authority support Plaintiffs' claims for money had and received and unjust enrichment, demonstrating these claims are not preempted by the UCC.

First, UCC § 3-118(g), codified in Va. Code Ann. § 8.3A-118(g), specifically states that money had and received claims as well as a "like action based on conversion" are allowed under the UCC. Thus, claims for money had and received and unjust enrichment, an action based on the wrongful possession (*i.e.*, conversion) of money belonging to another, are specifically allowed by the UCC.[32] NFCU's Motion must be denied as to these claims.

Furthermore, the UCC comments state Section 3-118(g) "covers warranty and conversion cases and other actions to enforce obligations or rights arising under Article 3."[33] This indicates that the UCC contemplates that claims for conversion and other "like" actions are subject to the same limitations period. The use of the plural in the comments is important because it shows that

---

[31] The 2025 UCC Comment concluded that "restitutionary theories such as unjust enrichment and money had and received (explicitly referenced in TBCC Section 3.118(g)(1)) are available in appropriate circumstances notwithstanding final payment of a check." *See* Pls.' Notice of Supp. Authority, Ex. A (Dkt 37-1).

[32] Under Virginia law, an action for unjust enrichment "will lie whenever one has the money of another which he has no right to retain, but which *ex aequo et bono* he should pay over to that other." *State of Qatar v. First Am. Bank of Va.*, 880 F. Supp. 463, 466 n.4 (E.D. Va. 1995) (quoting 2A Michie's Jurisprudence of Virginia and West Virginia, *Assumpsit* § 17 (1993)). The Virginia Supreme Court has defined conversion as "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *Mackey v. McDannald*, 298 Va. 645, 659, 842 S.E.2d 379, 387 (2020) (internal citations omitted).

[33] UCC § 3-118, cmt. 6; Va. Code Ann. § 8.3A-118; cmt. 6.

there are additional common law claims that are allowed under the UCC, even though only money had and received and conversion are specifically mentioned in the statute. Under NFCU's theory, if certain checks were counterfeit and not returned within 24 hours, NFCU and its customers could permanently retain stolen funds because all victim remedies would be preempted.[34] *See* UCC § 4-302 (midnight deadline rule for payor banks like Plaintiffs to pay or dishonor checks).

Second, UCC § 1-103(b), codified in Va. Code Ann. § 8.1A-103, permits these claims. Virginia Code Ann. § 8.1A-103 shows the Virginia legislature intended that the UCC be "liberally construed" such that "the principles of law and equity" can "supplement . . . provisions [of the UCC]."[35] Also, as the comments to the UCC note, "[t]he UCC was drafted against the backdrop of existing bodies of law, including the common law and equity, and relies on those bodies of law to **supplement** it[s] provisions in many important ways."[36] NFCU's arguments that Plaintiffs' unjust enrichment and money had and received claims are barred by the doctrine of preemption contradicts Section § 1-103(b) of the UCC, as common law claims cannot "supplement" UCC provisions if they are all preempted.

Third, controlling Virginia case law confirms that Plaintiffs' common law claims are not categorically preempted. In *Schlegel v. Bank of America*, 271 Va. 542, 628 S.E.2d 362 (2006), the Virginia Supreme Court considered breach of contract and conversion claims arising from unauthorized funds transfers initiated by the plaintiff's business partner and the bank's subsequent handling of those funds. Citing the comment to Virginia Code Ann. § 8.4A-102, the court held that UCC Article 4A preempted the common law claims only to the extent they "conflicted with its allocation of rights and remedies." *Id.* at 553; Va. Code Ann. § 8.4A-102, cmt. (The UCC rules

---

[34] Here, some checks were negotiated with missing or fraudulent endorsements, and Defendant simply stole these funds from Plaintiffs. Other checks appear to have been altered, and again, neither Defendant nor its customers were ever entitled to get these funds.

[35] UCC § 1-103(b); Va. Code Ann. § 8.1A-103.

[36] *Id.* at cmt. 2 (emphasis added).

concerning wire transfers set forth in Article 4A represent "a careful and delicate balancing of [competing] interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.").

Relying on this language, as well as persuasive authority from other jurisdictions interpreting it, the *Schlegel* court held that Article 4A displaced the plaintiff's common law claims to the extent they arose from the unauthorized payment orders at issue. *Id*. at 553. In contrast, the court held that common law claims arising from the bank's freezing of funds, rather than returning them, were not preempted because that situation was not "covered by any of the particular provisions of Title 4A." *Id*. at 554–55.

In this case, the UCC provisions that cover this situation arise under **UCC Article 4**, including § 4-208 (presentment warranties), codified in Va. Code Ann. § 8.4-207.2.[37] Unlike Article 4A, Article 4 contains no exclusivity language clarifying that it was intended to displace all common-law claims. *Compare* Va. Code Ann. § 8.4-102(a) *with* Va. Code Ann. § 8.4A-102, cmt. Therefore, under *Schlegel*, Plaintiffs Virgina money had and received and unjust enrichment common law claims are not categorically preempted.

### E. Plaintiffs' Negligence Claim Can Proceed Alongside Their UCC Claims.

Based on Va. Code Ann. § 8.3A-406, Plaintiffs bring a negligence claim under Virginia law. TAC at ¶ 31. UCC § 3-406, codified in Va. Code Ann. § 8.3A-406, allows a party to be held responsible for negligence contributing to a forged signature or to the alteration of an instrument. More specifically, UCC § 3-406 imposes a duty of ordinary care among the parties in the check system, even absent a direct relationship. *See* Va. Code Ann. § 8.3A-406, cmt. 1 ("Under Section

---

[37] Even NFCU acknowledges that Plaintiffs have stated a viable claim under UCC § 4-208. *See* Mot. at 1.

3-407 a person paying an altered instrument or taking it for value, in good faith and without notice of the alteration may enforce rights with respect to the instrument according to its original terms").

*Navy Federal Credit Union v. Lentz,* 890 S.E.2d 827 (Va. Ct. App. 2023), the sole Virginia authority cited by NFCU in its negligence section, does not apply here. NFCU's Mot. at 16. In holding that the member's negligence claims were preempted, the *Lentz* court relied on the "exclusive means" language contained in the official comment to Virginia Code § 8.4A-102, which governs wire transfers, as well as *Schlegel. Id.* at 831–32 (citing Va. Code Ann. § 8.4A-102 cmt. and *Schlegel v. Bank of America*, 628 S.E.2d 362). Significantly, UCC § 3-406 contains no exclusivity language indicating a clear intent to displace common law negligence claims. *Compare* Va. Code Ann. § 8.3A-406 *with* Va. Code Ann. § 8.4A-102. To the contrary, the comments to § 8.3A-406 demonstrate that the ability to bring a common law negligence claim is essential to its application, as the meaning of "ordinary care" is left to the court or jury to determine based on the circumstances and applicable commercial standards. Va. Code Ann. § 8.3A-406 cmt. 1. If, as NFCU contends, common law negligence claims are entirely displaced by the UCC, then the negligence–based, loss–allocation scheme set forth in § 8.3A-406 would be rendered meaningless. *See generally Eberhardt v. Fairfax Cty. Emps. Ret. Sys. Bd. of Trs.*, 721 S.E.2d 524, 526 (2012) (the Virginia Supreme Court concluding that statutes must be interpreted as a "consistent and harmonious whole so as to effectuate the legislative goal.").

UCC caselaw also shows that a common law claim for negligence can move forward alongside a UCC breach of warranty claim. For example, in *Sun 'n Sand, Inc. v. United California Bank*, the salient facts involve claims for altered checks.[38] In that case, the plaintiffs' employee made nine checks payable to the defendant–bank over a period of three years and obtained authorized signatures from an officer of plaintiffs, who believed the checks were to pay small sums

---

[38] *Sun 'n Sand, Inc. v. United California Bank*, 582 P.2d 920, 926 (Ca. 1978).

the company owed to the bank.[39] The employee then altered the amounts of the checks and deposited them at the defendant–bank.[40] The plaintiffs did not uncover the fraud until about three months after the last fraudulent check transaction, which occurred over three years after the first transaction.[41] Along with UCC breach of warranty claims, plaintiffs brought other claims, including negligence.[42] The Supreme Court of California held that the plaintiff's negligence claim could proceed, reasoning that the highly suspicious circumstances raised obvious red flags that should have alerted the bank to the fraud.[43]

### F. The Economic Loss Rule Does Not Bar Plaintiffs' Negligence Claims.

NFCU's argument that the economic loss rule bars Plaintiffs' negligence claim fails for several reasons. First, the economic loss rule typically applies to bar tort claims that merely duplicate contract remedies.[44] Here, Plaintiffs' negligence claim is based on NFCU's independent duty to follow reasonable banking practices and comply with federal anti-money laundering regulations—duties that exist independently of any contractual relationship between the parties.[45]

Second, the economic loss rule in Virginia contains exceptions for cases involving fraud.[46] NFCU's lax requirements for opening a Business Account and systematic failure to detect obvious fraud indicators—including allowing customers with minimal account history to deposit large checks with suspicious endorsements—created unreasonable risks that extended beyond any bilateral relationship between NFCU and Plaintiffs.

---

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* at 935.

[43] *Id.* at 937, 939.

[44] *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988) ("Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.").

[45] *See* Va. Code Ann. § 8.3A-406, cmt. 1 (negligence under UCC §3-406 applies to parties without a contractual relationship. For example, by "issuing the instrument and 'setting it afloat upon a sea of strangers' the maker or drawer voluntarily enters into a [noncontractual] relation with later holders which justifies imposition of a duty of care.").

[46] *See, e.g., Abi-Najm v. Concord Condominium, LLC,* 280 Va. 350, 354-55, 699 S.E.2d 483, 485 (2010); *Dunn Construction Co. v. Cloney*, 278 Va. 260, 682 S.E.2d 943 (2009).

Third, the Virginia Supreme Court has recognized that the economic loss rule does not apply when the tort duty arises from statutory or regulatory obligations independent of contract.[47] NFCU's obligations under the Bank Secrecy Act and anti-money laundering regulations create independent tort duties that support Plaintiffs' negligence claim.

### G. Plaintiffs Do Not Assert Direct Claims Under BSA/AML/KYC Regulations

NFCU mischaracterizes Plaintiffs' allegations regarding Bank Secrecy Act (BSA), Anti-Money Laundering (AML), and Know Your Customer (KYC) deficiencies. *See* Mot. at 16–17. Plaintiffs do not assert direct private rights of action under these federal regulations.

Instead, these allegations demonstrate NFCU's breach of the standard of care for negligence purposes. Federal banking regulations establish the standard of care that reasonable financial institutions must follow.[48] NFCU's violation of these standards constitutes evidence of both the applicable standard of care and its breach under established Virginia negligence principles.[49] Here, NFCU's systematic disregard of BSA/AML requirements demonstrates its failure to exercise the care that a reasonably prudent financial institution would exercise under similar circumstances. In turn, the fact that these regulations lack private enforcement mechanisms does not shield NFCU from tort-liability based on its failures to meet industry BSA/AML standards.

---

[47] *See Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 493, 706 S.E.2d 864, 870 (2011) ("Because the [plaintiffs] have alleged that [the defendants] breached common law and statutory duties independent of the company's contractual duty to control pests, we hold the trial court erred when it sustained the demurrers to the Kaltmans' negligence counts.").

[48] *See Perales v. First Am. Bank Tex., SSB*, Civil Action No. 1:00-CV-278-C, 2001 U.S. Dist. LEXIS 13977, at *17 (N.D. Tex. 2001) (holding that C.F.R. § 229, *et seq.* and 12 U.S.C.A. § 4001, *et seq.* regarding wire transfers was *prima facie* evidence of ordinary care) *Resolution Tr. Corp. v. Rupert Hays*, No. SA-92-CA-0653, 1993 U.S. Dist. LEXIS 21767, at *16 (W.D. Tex. 1993).

[49] *Milligan v. Cedars Leasing Co., LLC*, Civil Action No. 3:24-cv-00061, 2025 U.S. Dist. LEXIS 137534, at *15 (W.D. Va. 2025) ("For example, state courts in Virginia have held that OSHA regulations are relevant in determining the standard of care in negligence actions even though they do not create a private cause of action."); *Marslender v. Va. Elec. & Power Co.*, 37 Va. Cir. 199, 200-201 (Cir. Ct. 1995) (collecting federal case law for the proposition that OSHA regulations do not create a private cause of action, but are relevant to the "duty of care" in negligence actions under Virginia law).

**H. In the Alternative to a Dismissal With Prejudice, Plaintiffs Should be Allowed to Conduct Some Limited Discovery and Amend Their Complaint Thereafter.**

If the Court finds Plaintiffs' live complaint insufficient, Plaintiffs request that, because many relevant facts are in NFCU's custody or control, Plaintiffs be allowed to conduct some discovery and further amend their live complaint thereafter.

**I. Because Plaintiffs' Proposed Class is Ascertainable from the Pleadings, NFCU's Motion to Strike Should be Denied as Premature.**

Turning to NFCU's Motion to Strike Class Allegations, the Motion fails both procedurally and substantively. As an initial matter, the Motion is premature under established Fifth Circuit precedent. NFCU's Motion to Strike Plaintiffs' class allegations is not a "rare case" where it should be granted at the pleadings stage. *Haynes,* 2025 WL 627525, at *8. Again, a court may strike class allegations on the pleadings only "[w]here it is facially apparent from the pleadings that there is no ascertainable class." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). For instance, in *John v. National Security Fire and Casualty Company*, the plaintiffs *for the first time on appeal* argued that the district court should certify two (2) separate classes related to systemic under–adjusting of claims after Hurricanes Kartina and Rita. *Id*. at 444–45. In turn, the plaintiffs abandoned the unitary class proposed in the amended complaint dismissed by the district court (*i.e.,* the pleading at issue). *Id*. at 445. For this reason, the Fifth Circuit Court of Appeals easily concluded that the class proposed in the dismissed amended complaint was "not ascertainable" on its face. *Id.*

Here, the class defined in Plaintiffs' Third Amended Complaint is both ascertainable and maintainable. *See John,* 501 F.3d at 445; *Elson v. Black*, 56 F.4th 1002, 1007 (5th Cir. 2023). First, the class is well-defined in the Third Amended Class Action Complaint so that this Court can readily identify who is a potential class member. *Frey v. First Nat. Bank Sw.,* 602 Fed. Appx. 164, 168 (5th Cir. 2015) (quoting William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed.2011)) ("ascertainability requires only that the court be able to identify class members at some

17

stage of the proceeding."). Specifically, class members include "[a]ll banks and bank customers (1) within the United States and its territories (2) who have suffered financial loss as a result of check fraud facilitated by Navy Federal Credit Union, (3) from January 10, 2022 to the present." TAC at 8. Class members also include "[a]ll banks and bank customers (1) within the State of Texas, (2) who have suffered financial loss as a result of check fraud facilitated by Navy Federal Credit Union, (3) from January 10, 2022 to the present." *Id.* In analyzing this issue, the Court should note that "at the time NFCU declined to return the fraudulently obtained funds to Buckholts, NFCU had already determined through its own internal investigation that the NFCU account into which the stolen check proceeds were deposited was fraudulent and had closed it." TAC at ¶ 2. The proposed class and Texas subclass can be ascertained from NFCU's records.

Additionally, Plaintiffs' claims represent a uniform loss–allocation scheme, such that a class clearly can be maintained. The fact that NFCU's customers are engaged in fraud does not make Plaintiffs' claims against NFCU "fraud based." In contrast, in *Elson v. Black*, the plaintiffs asserted claims under various fraud–based consumer protection statutes in multiple states. [50] *Elson,* 56 F.4th at 1005; *see also id*. at 1007. Plaintiffs' UCC §4–207 and 4–208 claims represent a uniform loss–allocation scheme where misrepresentations and reliance are not at issue.[51] Thus, it is not facially apparent <u>from the pleadings</u> that there is no ascertainable class.[52]

---

[50] Plaintiffs' intentionally did not include a fraud cause of action or a fraud–based claim under a consumer protection statute (*e.g.,* the Texas Deceptive Trade Practices Act) in the Third Amended Complaint or prior complaints.

[51] *See Sw. Bank v. Info. Support Concepts, Inc.,* 149 S.W.3d 104, 111 (Tex. 2004) (concluding that the UCC represents a "comprehensive legislative fault scheme…."); *Am. Airlines Employees Fed. Credit Union v. Martin,* 29 S.W.3d 86, 92 (Tex. 2000) ("The UCC facilitates financial transactions, benefitting both consumers and financial institutions, by allocating responsibility among the parties according to whoever is best able to prevent a loss."); *Putnam Rolling Ladder Co., Inc. v. Manufacturers Hanover Tr. Co.,* 74 N.Y.2d 340, 349, 546 N.E.2d 904, 908 (1989) ("Unlike tort law, the UCC has the objective of promoting certainty and predictability in commercial transactions.").

[52] *See Guzman v. Bridgepoint Educ., Inc.,* No. 11CV69 WQH WVG, 2013 WL 593431, at *7 (S.D. Cal. Feb. 13, 2013) (quoting in part *Mancini v. Ins. Corp.,* No. 07cv1750–L(NLS), 2008 U.S. Dist. LEXIS 43954, at 9–10 (S.D.Cal. May 29, 2008)) ("The Court cannot determine <u>from the face of the Second Amended Complaint</u> that 'there are no questions of fact, that any questions of law are clear and not in dispute, [or] that under no set of circumstances could the ... [claims] succeed' based on the proposed class definition.") (emphasis added).

However, *if* the Court requests assurances at this stage that "differences in state law would not predominate over issues individual to each plaintiff," Plaintiffs have provided **Exhibit 1** (model UCC § 4-207 and codified versions of UCC § 4-207 in all 50 states and the District of Columbia) and **Exhibit 2** (model UCC § 4-208 and codified versions of UCC § 4-208 in all 50 states and the District of Columbia) in their prior Response to NFCU's Motion to Dismiss and Motion to Strike. *See* Dkt. No. 31–1; 31–2; *see also Elson,* 56 F.4th at 1005. As seen in these Exhibits, the adopted versions of UCC §§ 4–207 and 4–208 are nearly identical throughout the United States. As such, minor differences between the codified UCC §§ 4-207 and 4-208 and the model UCC §§ 4-207 and 4-208 are primarily of form and not substance. *See, e.g.,* N.Y. U.C.C. Law § 4-207 (McKinney) (combining UCC §§ 4-207 and 4-208 into a single statute). Additionally, as explained in Plaintiffs' Supplemental Choice of Law Brief (Dkt. No. 40), choice-of-law questions under the UCC do not alter the analysis or outcome where the relevant provisions are nearly identical. That is the case here, as the applicable provisions of Virginia's UCC—under which Plaintiffs proceed—and comparable UCC provisions in other states, including here in Texas, are all nearly identical.

**J. Issues Involving Commonality, Predominance, and Adequacy of Representation Are Also Premature and Should be Addressed at the Class Certification Stage.**

NFCU's remaining arguments about commonality and predominance suffer from the same timing defect. These complex legal determinations are inappropriate for resolution at the pleadings stage. Regarding state–wide differences in UCC preemption and variations in Plaintiffs' state common-law claims, NFCU's commonality and predominance attacks require a rigorous legal analysis conducted outside of Plaintiffs' Third Amended Complaint. *See* John, 501 F.3d at 445; Fed. R. Civ. P. 23. For this reason, these issues should be addressed at the class certification stage

19

after Plaintiffs have had the opportunity to conduct class discovery. *See Haynes,* 2025 WL 627525, at \*7 ("A more rigorous analysis of commonality is better suited to the class certification stage.").[53]

Additionally, like the plaintiff and potential class representative in *Haynes,* NFCU's attack on the adequacy of Plaintiffs' class representation should also be addressed at the class certification stage. *See* Mot. at 23–24; *Haynes,* 2025 WL 627525, at \*5 ("Though Defendant styles its argument as an attack on standing, it is more accurately an attack on the adequacy of Plaintiff's representation of the class under Rule 23(a). This question is better left to the class certification stage."). Accordingly, NFCU's Motion to Strike based on commonality issues, predominance issues, and concerns regarding the adequacy of Plaintiffs' class representation are premature and the Motion to Strike should be denied.

### K. Common Issues Predominate Despite Variations in Fraud Types.

Even if NFCU's arguments were ripe for consideration, they fail on the merits. NFCU's argument that individualized fraud inquiries preclude class certification ignores the common thread uniting all class members: NFCU's lax requirements for opening Business Accounts, systematic failure to implement adequate fraud detection procedures, and allowancing suspicious transactions to be processed without adequate verification. Courts routinely certify classes involving multiple types of misconduct when the defendant's common practices or policies create liability.[54] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999), is instructive. There, the Fifth Circuit upheld certification of a class of riverboat casino employees exposed to secondhand smoke who developed respiratory illnesses. *Id.* at 623–24. In analyzing Rule 23's commonality and typicality requirements, the court emphasized that liability was premised on a common defect—the casino's ventilation system—even though multiple harmful substances (*e.g.,*

---

[53] *See also Hibbs-Rines v. Seagate Techs., LLC.,* No. C 08-05430 SI, 2009 WL 513496, at \*3 (N.D. Cal. Mar. 2, 2009) ("Discovery is integral to 'developing the shape and form of a class action.'").

[54] *See Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620 (5th Cir. 1999) (Plaintiffs suffered from respiratory illnesses caused by defendant's improperly maintained air-conditioning and ventilating system.).

tobacco smoke, paint fumes) passed through it. *Id*. at 625, 628. The court found that variations among the causal agents circulating through the defective ventilation system did not preclude class certification. *Id.* at 628 ("The court can easily abide by this precedent [limiting a negligent party's liability to injuries caused by the same condition that rendered the party negligence] by instructing the jury to answer special verdicts finding whether the Treasure Chest was negligent, or the Casino was unseaworthy, as to each alleged causal agent, i.e., tobacco smoke, dust mites, fungi, paint fumes, et cetera.").

Here, NFCU's decision to implement uniformly inadequate policies and procedures created the conditions that enabled various forms of check fraud—the common issue in this case. Moreover, UCC warranty claims involve objective determinations that minimize individualized inquiries.[55] The question is not whether NFCU subjectively intended to facilitate fraud, but whether it warranted facts that were objectively false—namely, that it was authorized to obtain payment and that the instruments were unaltered—which can be established through common proof regarding NFCU's practices.

The existence of different affirmative defenses does not defeat commonality where, as here, the defenses arise from the same set of operative facts.[56] NFCU's catalog of potential affirmative defenses does not defeat class certification because these defenses arise from common operative facts and can be resolved through common proof. Each of the UCC defenses NFCU cites—UCC Sections 3-404, 3-405, 3-406, and 4-406—serve a common purpose: allocating loss based on the conduct of the parties involved in the check collection process. *See* NFCU's Mot. at 20. Although these provisions operate in different ways, each incorporates ordinary care as part of

---

[55] *See In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1057 (S.D. Tex. 2012) ("As is true in many consumer-class actions comprised of negative-value individual claims, no single class member here has a sufficient stake to be closely involved in the litigation.").
[56] *See Mullen*, 186 F.3d at 625, 627 (5th Cir. 1999).

the UCC's loss-allocation framework, whether as a direct basis for liability or through comparative fault. This "ordinary care" determination depends on common evidence about industry standards for check security and fraud prevention, such as Section 3-406 (negligence contributing to forgery) and Section 4-406 (customer's duty to report unauthorized signatures).

Further, many of these defenses are inapplicable. UCC § 3-404 (imposter rule) does not apply because Plaintiffs do not allege that an imposter, through the mail or otherwise, caused the issuance of a check. Rather, as seen in the Third Amended Complaint, Plaintiffs allege that a check was stolen from the mail and the endorsement on the back of the check was either missing or forged and the true intended payee never received the proceeds. TAC at ¶¶ 3–4, 25. Likewise, § 3-405 is inapplicable because there are no allegations that an employee with "responsibility" caused the check fraud. NFCU thus improperly relies on facts outside the pleadings at the motion to dismiss stage. Nor does the live Complaint allege that Plaintiffs or their customers substantially contributed to the check fraud, negating any reliance on § 3-406. Section 4-406, a timely-reporting defense, is also not at issue here. These are affirmative defenses for which NFCU bears the burden, and their potential variation across class members does not create individualized issues where they arise from common facts and can be resolved through common proof.

### L. NFCU's Variable Policies Support Class Certification.

NFCU's argument that its differing policies for checks above and below $25,000 defeats commonality actually supports class certification. Those policies apply uniformly to putative class members depending on whether their financial losses fall above or below that threshold. *See* NFCU's Motion at 21; *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (holding that multiple common issues bearing on liability—such as unseaworthiness and negligence—support a finding of commonality). Indeed, the allegation that NFCU failed to implement adequate fraud detection procedures for checks under $25,000 describes a systemic

practice, not individualized conduct, and thus strongly supports class treatment. Therefore, the fact that some class members' checks exceeded the $25,000 threshold and were subjected to additional review does not defeat commonality—it demonstrates that NFCU's enhanced procedures were inadequate across the board.

Again, courts routinely certify classes where the defendant's policies affected different class members in different ways, as long as the policies themselves are common.[57] Here, all class members were subjected to NFCU's inadequate fraud detection policies, even if the specific procedures varied based on transaction size.

Additionally, *Flecha v. Medicredit, Inc.*, 946 F.3d 762 (5th Cir. 2020), the primary authority NFCU relies on for its commonality argument, is readily distinguishable. *See* NFCU Mot. at 21. First and foremost, *Flecha* was decided **after** a class was certified. 946 F.3d at 765. Here, by contrast, the Court is evaluating the sufficiency of Plaintiffs' live complaint. Accordingly, at this early stage, Plaintiffs need only plausibly allege an ascertainable class. *See John,* 501 F.3d at 445; *Haynes,* 2025 WL 627525, at *8.

Second, *Flecha* turned on the absence of a common answer to an intent-based inquiry. Specifically, in Flecha, liability under the Federal Debt Collection Practices Act depended on whether the defendant–debt collector intended to *not* follow through on its threat to sue. *Id.* at 767–68. Because the plaintiff failed to present any evidence of the debt collector's litigation intent, the 5th Circuit held that there cannot be a common answer to this critical question. *Id.*

Intent is not the central issue here. Plaintiffs' claims do not depend on the individualized intent of NFCU decisionmakers in issuing claim denials, and the TAC contains no allegations of such intent. *See* TAC at ¶¶ 1–3, 25 (describing the fraudulent checks and NFCU's claim denials). Instead, Plaintiffs' claims focus on NFCU's standardized, institution-wide check–fraud prevention

---

[57] *Mullen,* 186 F.3d at 625–27.

policies. That is, NFCU's uniform decision to apply heightened fraud controls only to checks at or above $25,000, while relaxing those controls for checks below $25,000 deposited into business accounts. *See* TAC at ¶¶ 19–23. Those policies apply to all putative class members and are susceptible to common proof. *See Mullen*, 186 F.3d at 625.

### M. There Are Not Conflicting Interests Between Banks and Bank Customers

Laslty, NFCU's argument that banks and bank customers have conflicting interests misunderstands both the UCC's loss allocation scheme and class action law. While UCC § 4-401 provides that banks may only charge customer accounts for "properly payable" items, this does not create the kind of fundamental conflict that precludes class certification.[58]

In cases involving fraudulent checks like those at issue here, both banks and their customers are victims of the same wrongdoing and both suffer losses that stem from NFCU's breach of warranty in presenting fraudulent items for payment. Here, establishing NFCU's liability benefits both banks and customers by creating a recovery source for their losses. Any subsequent allocation issues between banks and customers can be resolved through subrogation principles that do not affect the claims against NFCU.

### V  Conclusion

In summary, NFCU's Motions fail on multiple grounds. The UCC does not preempt Plaintiffs' claims, the class allegations are facially adequate such that NFCU's motion to strike is premature. Accordingly, this Court should deny NFCU's Motions in their entirety. In the alternative, Plaintiffs should be allowed to conduct discovery and amend their Third Amended Complaint thereafter. Plaintiffs have attached a proposed order as **Exhibit 1.**

Dated: April 17, 2026                    Respectfully submitted,

                              By:     */s/John R. Fabry*
                                      John R. Fabry
                                      Texas Bar No. 06768480

---

[58] UCC § 4-401;  Va. Code Ann. § 8.4-401.

Morgan R. Ferrell
Texas Bar No. 24132044
Philip J. Koelsch
Texas Bar No. 24110103

**The Carlson Law Firm, P.C.**
559 S. Interstate Hwy 35
Suite 250
Round Rock, TX 78664
Telephone: (512) 671-7277
jfabry@carlsonattorneys.com
mferrell@carlsonattorneys.com
pkoelsch@carlsonattorneys.com

By:     /s/Amos L. Barton
Amos L. Barton
Texas Bar No. 24031847
**BARTON LAW FIRM, PLLC**
301 Junction Highway, Suite 100
Kerrville, Texas 78028 Phone: (830) 257-7575 Fax:
(830) 257-7580
Amos@amosbarton.com

By:     /s/William P. Huttenbach
William P. Huttenbach
Texas Bar No. 24002330
**Crain Caton & James**
1401 McKinney, Suite 1700
Houston, Texas 77010
(713) 658-2323 Main
(713) 658-1921 Fax
whuttenbach@craincaton.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

On  April 17, 2026 a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and served on all registered counsel of record using the CM/ECF system.

/s/ John R. Fabry

25