**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| BUCKHOLTS STATE BANK, SUSSER BANK, AND CIERA BANK, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>*Defendant*. | Case No. 1-25-cv-00052 |

**DEFENDANT NAVY FEDERAL CREDIT UNION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(B)(6) AND ITS MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 23**

# TABLE OF CONTENTS

Page


I. Plaintiffs' Claims Are Not Appropriate for Class Treatment and Should Be Struck. ......... 1

A. Individual issues predominate. ........................................................................ 1

B. Plaintiffs are not adequate class representatives. .................................................. 5

C. The Court need not wait for class certification. .................................................... 5

II. Plaintiffs Should Only Be Allowed to Pursue Their Presentment Warranty Claims. ......... 6

A. Plaintiffs do not allege that NFCU transferred the checks at issue. ........................ 7

B. The UCC has created a comprehensive scheme in which sections 4.208 and 4.302 preempt Plaintiffs' equitable and common-law claims. ........................................ 9

C. Plaintiffs cannot enforce federal banking laws and regulations. .......................... 11

## TABLE OF AUTHORITIES

Page(s)

### Cases

*1/2 Price Checks Cashed v. United Auto. Ins. Co.*,
344 S.W.3d 378 (Tex. 2011)....................9

*Am. Dream Team, Inc. v. Citizens State Bank*,
481 S.W.3d 725 (Tex. App.—Tyler 2015, pet. denied)....................9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................4

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Berger v. Compaq Comput. Corp.*,
257 F.3d 475 (5th Cir. 2001)....................5

*Cadence Bank v. JPMorgan Chase Bank, N.A.*,
2024 WL 5358446 (S.D. Tex. Dec. 5, 2024)....................7, 8, 9, 10

*Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*,
759 F.3d 498 (5th Cir. 2014)....................10

*Cole v. Gen. Motors Corp.*,
484 F.3d 717 (5th Cir. 2007)....................3

*Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*,
462 S.W.3d 128 (Tex. App. – Houston [1st Dist.] 2015, no pet.)....................7

*Earl v. Boeing Co.*,
21 F.4th 895 (5th Cir. 2021)....................6

*Elson v. Black*,
56 F.4th 1002 (5th Cir. 2023)....................1, 2, 4, 5

*Fetter v. Wells Fargo Bank Tex., N.A.*,
110 S.W.3d 683 (Tex. App.—Houston [14th Dist.] 2003, no pet.)....................10

*Flecha v. Medicredit, Inc.*,
946 F.3d 762 (5th Cir. 2020)....................4

*Gene And Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008)....................3

*Haynes v. Shonaz Foods, Inc.*,
2025 WL 627525 (W.D. Tex. Feb. 19, 2025)....................4

*Hunter v. Navy Fed. Credit Union*,
2024 WL 3094610 (N.D. Tex. June 20, 2024) ....................12

*John v. Nat'l Sec. Fire and Cas. Co.*,
501 F.3d 443 (5th Cir. 2007) ....................3, 5

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
751 F.3d 368 (5th Cir. 2014) ....................12

*Mills v. Warner-Lambert Co.*,
581 F. Supp. 2d 772 (E.D. Tex. 2008) ....................10

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) ....................3

*Peerless Ins. Co. v. Tex. Com. Bank-New Braunfels, N.A.*,
791 F.2d 1177 (5th Cir. 1986) ....................10

*Perales v. First Am. Bank Tex., SSB*,
2001 U.S. Dist. LEXIS 13977 (N.D. Tex. 2001) ....................12

*Rutledge v. United States*,
161 F.3d 7 (5th Cir. 1998) ....................12

*Schlegel v. Bank of America*,
271 Va. 542, 628 S.E.2d 362 (2006) ....................11

*Smith v. Merritt*,
940 S.W.2d 602 (Tex. 1997) ....................11

*Southstar Bank, S.S.B. v. JPMorgan Chase Bank, N.A.*,
2025 WL 2052310 (S.D. Tex. July 22, 2025) ....................7, 8, 9, 10, 11

*Spitzer Mgmt., Inc. v. Interactive Brokers, LLC*,
2013 WL 6827945 (N.D. Ohio Dec. 20, 2013) ....................12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................2, 4

*Walters v. Blue Cross and Blue Shield of Tex., Inc.*,
2022 WL 902735 (N.D. Tex. Mar. 28, 2022) ....................11, 12

*Zachery v. Texaco Expl. & Prod., Inc.*,
185 F.R.D. 230 (W.D. Tex. 1999) ....................4

**Statutes**

Ga. Code Ann. § 11-4-208 ....................6

N.C. Gen. Stat. Ann. § 25-4-207.1 ....................6

Tex. Bus. & Com. Code Ann. § 4.208 ....................8

UCC § 3.118 ....................10, 11

UCC § 3.405 ....................10
UCC § 3.418(a) ....................11
UCC § 3.419 ....................10
UCC § 3.420 ....................10, 11
UCC § 4.101 ....................6
UCC § 4.102 ....................6. 7, 11
UCC § 4.102(b) ....................3, 7
UCC § 4.104 ....................7
UCC § 4.105 ....................8
UCC § 4.207 ....................8
UCC § 4.208 ....................7, 9, 10, 11
UCC § 4.302 ....................1, 6, 7, 9, 10, 11
Va. Code Ann. § 8.4-207.2 ....................6

**Rules**

Fed. R. Civ. P. 23(c)(1)(A) ....................1, 5
Fed. R. Civ. P. 26(b) ....................6

Plaintiffs try to convert a routine Uniform Commercial Code ("UCC") allocation-of-loss dispute into a nationwide class action. But the UCC provides the exclusive framework for resolving these claims—and that framework is inherently individualized and transaction-specific. This case concerns allegedly fraudulent customer checks that NFCU presented to three Texas banks for payment. Resolving liability requires check-by-check determinations of the alleged fraud, the governing law, and the defenses available under the UCC.

Plaintiffs' Opposition identifies no Fifth Circuit authority certifying a nationwide (or Texas) class asserting fraud-based claims like these. That omission is telling. When individualized issues predominate, the Fifth Circuit instructs courts to strike class allegations at the pleading stage. *Elson v. Black*, 56 F.4th 1002, 1006–08 (5th Cir. 2023). And "discovery has not yet begun" is not an answer—*Elson* itself could not have come out that way if discovery were required, and Plaintiffs cannot rely on a promise of discovery to manufacture predominance. Rule 23 requires that a court "must determine" class certification "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A).

On the merits, Plaintiffs' "check fraud" claims rise and fall under section 4.208 of the relevant states' versions of the UCC. That provision, together with section 4.302, preempts Plaintiffs' equitable and common-law claims. The Court should grant NFCU's Motion in full.

## I. Plaintiffs' Claims Are Not Appropriate for Class Treatment and Should Be Struck.

The absence of Fifth Circuit precedent supporting certification of either a nationwide or Texas class of check fraud claims is dispositive. This "class action cannot be maintained." *Elson*, 56 F.4th at 1006.

### A. Individual issues predominate.

Plaintiffs' proposed nationwide and Texas classes cannot be certified because individual

issues regarding the alleged fraud overwhelm any common issues of law or fact. Plaintiffs' arguments to the contrary cannot be squared with their factual allegations or controlling case law.

First, Plaintiffs attempt to argue this check-fraud case isn't really a fraud case. They insist that just because "NFCU's customers are engaged in fraud [that] does not make Plaintiffs' claims against NFCU 'fraud based.'" Opp. at 18. But Plaintiffs' complaint is replete with allegations of check fraud, *see, e.g.*, TAC ¶¶ 1–3, 20, 24, 27, 43, 55, 69–70, which necessarily entail individualized factual and legal inquiries, all of which will predominate and render class treatment inappropriate in this circuit—or elsewhere. *Elson*, 56 F.4th at 1006–07.

As NFCU detailed in its opening Motion, Mot. at 18–22, to resolve each potential claim in this fraud-based putative class action, the Court would first have to determine whether each individual check at issue was fraudulent in some way (an individualized issue). This would require sorting out whether each check involved unauthorized signatures or endorsements, alterations, potential counterfeits, or theft (another individualized issue). And even if Plaintiffs could prove "in one stroke"[1] that every check they believe should not have been paid did in fact involve some kind of fraud, the Court would then have to resolve—for each check—whether NFCU is liable for the check amount or whether NFCU has an affirmative defense to the particular claim given the circumstances that led to the particular check being paid (yet another individualized issue).

For example, Plaintiffs argue that their complaint alleges no facts implicating the imposter rule defense. Opp. at 22. But NFCU may assert affirmative defenses—including the imposter rule—where the individualized facts support them. And while Plaintiffs suggest that different affirmative defenses against different class members does not mean there are individualized issues, they present no authority for this proposition. On the contrary, as NFCU pointed out in its Motion,

---

[1] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

the Fifth Circuit has previously determined that affirmative defenses can and do lead to individualized issues. *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (rejecting class due to the "predominance of individual issues necessary to decide an affirmative defense"). Plaintiffs cite *Mullen v. Treasure Chest Casino, LLC*, for the unremarkable proposition that "[t]he existence of different affirmative defenses does not defeat commonality where . . . the defenses arise from the same set of operative facts." Opp. at 21 (citing 186 F.3d 620, 625, 627 (5th Cir. 1999)). But *Mullen* addressed only a single affirmative defense—in the context of adequacy. *Mullen*, 186 F.3d at 626. And the court's ruling relied on the fact that the putative class members all suffered from the same harm and that "all of the claims [arose] under federal law." *Id.* at 626–27. Neither is true here.

Second, Plaintiffs' attempt to sidestep the Fifth Circuit's command that "variations in state law may swamp any common issues and defeat predominance," *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007), by pointing to their prior response, which attached a 50-state UCC exhibit (Opp. at 19), falls far short of the "'extensive analysis' of state law variations" that the Fifth Circuit requires "to reveal whether [the variations] pose 'insuperable obstacles'" to class certification. *Cole*, 484 F.3d at 724 (citation omitted). Plaintiffs fail to address any of the state-law differences that NFCU identified in its Motion. Mot. at 22–23 (explaining states' differing views on UCC preemption). Nor do they grapple with the fact that, when UCC Section 4.102(b) is properly applied, the governing law for each putative class member's claim depends on the location where the relevant check was deposited. Instead, they argue they need class discovery, without identifying what discovery is necessary or how such discovery would improve their certification prospects. Opp. at 19–20. Discovery will not cure the variations in state law, and Plaintiffs should not be permitted to tax NFCU's resources in a futile attempt to do so. *Cf. John v.*

*Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (affirming dismissal of class allegations at pleading stage).

Third, Plaintiffs' claims cannot be certified because they implicate numerous alleged policies. Plaintiffs try to avoid this obstacle by arguing that NFCU's "procedures were inadequate across the board." Opp. at 23. But even if that were true (it is not), what matters is whether any common question has "common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves . . . . Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."); *see also Elson*, 56 F.4th at 1006 (explaining that the "'commonality' requirement is subsumed under" the predominance inquiry) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)). Plaintiffs' complaint makes clear the answer is "no." Plaintiffs themselves allege the practice or procedure that may have applied to the checks paid by two of the named plaintiffs (Buckholts and Ciera) was different from, and less rigorous than, the "review process" that applied to the check paid by the other named plaintiff (Susser). TAC ¶ 23. When faced with similar claims that implicate a company defendant's differing policies or procedures, courts in this circuit reliably hold a class cannot be certified. *See Zachery v. Texaco Expl. & Prod., Inc.*, 185 F.R.D. 230, 246 (W.D. Tex. 1999); *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766–68 (5th Cir. 2020) (reversing certification where no evidence of uniform policy).

These differing policies also make Plaintiffs' reliance on *Shonaz* misplaced. There, the court held that the "[p]laintiff ha[d] sufficiently pleaded commonality" because the proposed class included "wheelchair users with qualified mobility disabilities who encountered excessive sloping conditions within the Parking Areas" of the defendant's stores. *Haynes v. Shonaz Foods, Inc.*, 2025 WL 627525, at *1, *7 (W.D. Tex. Feb. 19, 2025). The case says nothing about check fraud-

based claims like the ones being pressed by Plaintiffs in this case. Nor does it say anything about the state choice-of-law issues that will "swamp" any common issues in this case.

**B. Plaintiffs are not adequate class representatives.**

As NFCU argued, a class cannot be certified here because Plaintiffs, three Texas banks, cannot adequately represent a class of "[a]ll banks and bank customers." Mot. at 5. Plaintiffs concede that the class definitions present "allocation issues between banks and customers." Opp. at 24. That concession speaks volumes. Plaintiffs' interests are antagonistic to those of the absent class members—bank customers and drafters—so Plaintiffs cannot adequately represent the proposed class. *See Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 480 (5th Cir. 2001).

**C. The Court need not wait for class certification.**

Instead of addressing the substance of their check fraud claims and the complete absence of authority supporting class certification, Plaintiffs argue that their class claims should be addressed *later*, at the class certification stage. *See, e.g.*, Opp. at 19–20. But this timing argument misses the point. The nature of Plaintiffs' claims makes them unsuitable for class treatment, and the pleadings themselves show why: "[I]t is facially apparent from the pleadings that there is no ascertainable class." *John*, 501 F.3d at 445. The Court need not wait until a later stage to assess Plaintiffs' claims. *Id.* Rule 23 makes clear that the Court "must determine" whether to certify a class "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Plaintiffs have no response to the plain text of Rule 23.

Nor is additional discovery an answer to *Elson*. If a plaintiff could defeat a motion to strike class allegations simply by protesting that discovery had not yet occurred, *Elson* itself would have come out the other way—the Fifth Circuit would have remanded for discovery rather than affirming the district court's decision to strike the class allegations. It did not. *Elson*, 56 F.4th at

1006–08. *Elson* is binding authority not only on the substantive question of whether individualized fraud issues defeat predominance, but equally on the procedural question of whether a court may resolve that issue at the pleading stage before any class discovery has taken place. Plaintiffs' demand for discovery is simply an attempt to circumvent that holding.

Plaintiffs are not entitled to class discovery to test their claims. The burden on NFCU would be unfair and too great. *Cf. Earl v. Boeing Co.*, 21 F.4th 895, 899 (5th Cir. 2021) ("[T]he proportionality requirement imposed by Federal Rule of Civil Procedure 26(b) would impose far different constraints on discovery by eleven named plaintiffs than it would for classes."). And discovery will not change the fact that individualized issues related to the alleged fraud, variations in state law, and NFCU's policies and defenses will predominate. Nor will discovery magically make Plaintiffs adequate class representatives. Thus, the Court should strike Plaintiffs' class claims now "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); *cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (discussing "in terrorem" effect when claims are "aggregated").

## II. Plaintiffs Should Only Be Allowed to Pursue Their Presentment Warranty Claims.

This lawsuit presents disputes between banks about who bears the loss when a fraudster deposits a check and that check is subsequently presented for payment by the depositary bank and paid by the drawee bank. In such circumstances, Article 4 of the UCC, which covers "Bank Deposits and Collections," controls—even over Article 3. UCC §§ 4.101, 4.102. Article 4 sets up a specific regime in which the payor bank has until midnight to decide whether to accept a check that has been presented for payment. UCC § 4.302. In exchange for this short review period, the UCC imposes certain warranties from the presenting bank to the payor bank.[2] UCC § 4.208.

[2] *See* Va. Code Ann. § 8.4-207.2; Tex. Bus. & Com. Code Ann. § 4.208; Ga. Code Ann. § 11-4-208; N.C. Gen. Stat. Ann. § 25-4-207.1.

When the UCC provides a comprehensive remedial scheme, courts consistently hold that overlapping common-law claims are displaced. This is the case here—the specific regime created by sections 4.208 and 4.302 preempts equitable and common-law claims presented by this case. *See, e.g.*, *Cadence Bank v. JPMorgan Chase Bank, N.A.*, 2024 WL 5358446, at *4–6 (S.D. Tex. Dec. 5, 2024), *report and recommendation adopted*, 2025 WL 296147 (S.D. Tex. Jan. 24, 2025); *Southstar Bank, S.S.B. v. JPMorgan Chase Bank, N.A.*, 2025 WL 2052310, at *2 (S.D. Tex. July 22, 2025); *see also Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*, 462 S.W.3d 128, 138 (Tex. App. – Houston [1st Dist.] 2015, no pet.) ("When the UCC applies, common-law claims that conflict with the UCC are precluded.") (collecting cases) (finding common law claims for breach of contract, breach of warranty, and negligence were precluded).

The UCC also dictates what law should govern Article 4 claims—which is the law of the place where the item was presented. Plaintiffs' reading of UCC § 4.102(b) is incorrect: UCC section 4.102(b) makes no mention of corporate headquarters or policy-setting locations in determining governing law. *Cf.* Opp. at 4–6. Rather, as this Court recognized, Dkt. No. 38, the governing law follows the place where the relevant bank "handle[d]" the "instrument" for "collection or payment," which is the branch where each check was presented. UCC § 4.102 (referring to the liability of a bank that handles an item); UCC § 4.104 (defining "item"). Plaintiffs' UCC claims—and their preemption of Plaintiffs' common-law claims—would be governed by Texas, Georgia, and North Carolina law, Mot. at 8; and that analysis under those states' laws still results in preemption of Plaintiffs' common law claims.

### A. Plaintiffs do not allege that NFCU transferred the checks at issue.

Plaintiffs do not allege NFCU did anything with the relevant checks other than present them for payment. Under the UCC, "presenting" a check for payment is distinct from

"transferring" a check to someone else. That's why the UCC contains distinct warranty provisions associated with presentment versus transferring. *Compare* UCC § 4.208, *with* UCC § 4.207; *see also Cadence Bank*, 2024 WL 5358446, at *7; *Southstar Bank*, 2025 WL 2052310, at *2.

Plaintiffs' arguments to the contrary are not persuasive. First, Plaintiffs admit they are not "collecting banks" for purposes of these transactions. Opp. at 7. That forecloses their transfer warranty claim. Section 4.207 runs to "collecting bank[s]" and section 4.105 excludes "the payor bank" from its definition of "[c]ollecting bank." UCC §§ 4.105, 4.207; *see Cadence Bank*, 2024 WL 5358446, at *7 (concluding that "transfer warranty does not run to a payor bank"). Plaintiffs argue this is irrelevant because they are collecting banks in situations that are inapplicable here. Opp. at 7. But UCC section 4.207 uses the phrase "subsequent collecting bank," connecting the term "collecting bank" to the item at issue. It does not authorize any bank that has ever collected to sue under this provision. Banks cannot assert claims based on roles they play regarding items not at issue in a particular case. What matters is the roles each bank had in the transactions at issue. And Plaintiffs admit that they are "payor banks for purposes of the final payment decision" regarding the checks at issue here. Opp. at 7. So they cannot recover under section 4.207.

Second, Plaintiffs' reading of the UCC violates the rule against surplusage. *See Cadence Bank*, 2024 WL 5358446, at *7. Section 4.208's presentment warranty is more specific and limited than the general transfer warranty described in section 4.207. "If the drawee/payor bank [here, the plaintiff banks] were included within the ambit of those benefitting from the more general transfer warranty set forth in section 4.207, then the presentment warranty of section 4.208 would appear to be surplusage within the statute." *Id.*

Third, Plaintiffs assert—without explanation—that NFCU's reading of the UCC "would create a liability gap where presenting banks could avoid both transfer and presentment warranty

obligations." Opp. at 7. Not so. NFCU's position is simply that presenting banks have the presentment warranty obligations in section 4.208 (subject to that section's affirmative defenses).

**B. The UCC has created a comprehensive scheme in which sections 4.208 and 4.302 preempt Plaintiffs' equitable and common-law claims.**

To start, Plaintiffs' breach of contract claim under Texas law is preempted. *Am. Dream Team, Inc. v. Citizens State Bank*, 481 S.W.3d 725, 732 (Tex. App.—Tyler 2015, pet. denied). *1/2 Price Checks* does not hold otherwise. *Cf.* Opp. at 8 & n.21. That case only involved a UCC claim against the drawer of a dishonored check under section 3.414(b). *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382–84 (Tex. 2011). The Court simply held that attorneys' fees are available under such UCC claims because they are like a "claim on a contract." *Id.* at 381, 392. That case *does not* hold that breach of contract claims survive the UCC's preemption of state-law claims regarding check transactions.

Moreover, Plaintiffs do not muster a single case contradicting *Cadence Bank* or *SouthStar Bank*. *See Cadence Bank*, 2024 WL 5358446, *4–6 (holding that equitable and common-law claims are preempted by sections 4.208 and 4.302); *Southstar Bank*, 2025 WL 2052310, at *2 (finding that the comprehensive scheme created by sections 4.208 and 4.302 "preempt[s] the common law remedies that [Plaintiff] invokes when, as here, the issue is the rights and obligations when a bank deposits a fraudulent check and the payor bank sends the funds to the depository bank"). Instead, Plaintiffs point to "an official Comment in 2025" by the Texas UCC Committee. Opp. at 10–11. What Plaintiffs fail to mention is that their own counsel sits on the Texas UCC Committee and likely was involved in issuing this new comment after losing the two cases they now seek to undermine.[3] More importantly, that comment is not law and cannot override binding

[3] *See* https://craincaton.com/attorneys/william-pat-huttenbach/ (identifying William Patterson Huttenbach as "State Bar of Texas, Business Section, UCC Comments Committee member"); *Cadence Bank*, 2024 WL 5358446 (listing William Patterson Huttenbach as counsel for Cadence

statutory text or judicial decisions. *See, e.g.*, *Fetter v. Wells Fargo Bank Tex., N.A.*, 110 S.W.3d 683, 687 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (UCC comments are only persuasive authority—"not law.").

Rather than addressing these cases, Plaintiffs point to the general notion that the common law sometimes supplements the UCC and cite cases addressing separate UCC provisions that allow common-law claims to proceed—so long as they do not conflict with the UCC. But as Plaintiffs concede, this Circuit requires "case-by-case analysis of whether specific common law principles conflict with particular UCC provisions." Opp. at 10. Every case from this circuit addressing sections 4.208 and 4.302 has held that they preempt equitable and common-law claims. *Cadence Bank*, 2024 WL 5358446, *4–6; *Southstar Bank*, 2025 WL 2052310, at *2.[4]

Plaintiffs try to dismiss *Cadence Bank* as a case about "wire transfers and ACH payments." Opp. at 10. But "Cadence Bank alleged that the '*[c]heck* was fraudulent and/or altered.' " *Cadence Bank*, 2024 WL 5358446 at *2 (emphasis added) (citation omitted). The court's decision in that case was based on Articles 3 and 4 of the UCC (checks), not Article 4A (wire transfers). *Cadence Bank* held the relevant UCC provisions preempt equitable and common-law claims in nearly identical factual circumstances. *Id.* at *2, *4–6. *Southstar Bank* confirms *Cadence Bank* is no outlier. This Court should not stray from these persuasive authorities.

Next, Plaintiffs try to carve their money-had-and-received claim out of preemption by citing UCC section 3.118. Opp. at 11–12. But UCC section 3.420 prohibits such claims if brought

---

Bank); *Southstar Bank*, 2025 WL 2052310 (listing William Patterson Huttenbach as counsel for Southstar Bank).

[4] Plaintiffs cite three cases to support their preemption argument, Opp. at 9–11, but none address section 4.208 or section 4.302. *See Peerless Ins. Co. v. Tex. Com. Bank-New Braunfels, N.A.*, 791 F.2d 1177, 1178 (5th Cir. 1986) (UCC § 3.419); *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 502 (5th Cir. 2014) (UCC § 3.405); *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 780 (E.D. Tex. 2008) (federal preemption of state law).

by the acceptor—here, the plaintiff Banks. UCC § 3.420. So section 3.118 is inapplicable. Plaintiffs' Virginia case law, *see* Opp. at 12–13 (citing *Schlegel v. Bank of America*, 271 Va. 542, 628 S.E.2d 362 (2006)), is similarly inapplicable and, in any event, it shows that common-law claims are not categorically permitted to proceed. And Plaintiffs do not even attempt to distinguish NFCU's Texas, Georgia, and North Carolina cases.

Similarly, Plaintiffs have no claim under section 3.418. That statute only explicitly covers scenarios in which (1) the drawee bank (Plaintiffs here) mistakenly believed that there was not a stop order on the check; or (2) the drawee bank mistakenly believed that the drawer's signature was authorized. UCC § 3.418(a). But even if this section did authorize equitable or common-law claims, Article 4 controls where, as here, there is a conflict between Article 3's broader scope and the careful scheme set up by Article 4. *See* UCC § 4.102 (when "there is conflict, [Article 4] governs Article 3"). Furthermore, the statute makes clear that the right of recovery is against "the person to whom or for whose benefit payment was made." UCC § 3.418(a). In other words, even if section 3.418 applied in the present circumstances, Plaintiffs' right of recovery is against the fraudsters—not NFCU. *Southstar Bank*, 2025 WL 2052310, at *2–3.

**C. Plaintiffs cannot enforce federal banking laws and regulations.**

Plaintiffs' negligence claim is clearly preempted by the comprehensive scheme created by UCC sections 4.208 and 4.302. But even if those claims were not preempted, Plaintiffs cannot use the Bank Secrecy Act ("BSA"), Anti-Money Laundering ("AML"), and "Know Your Customer" ("KYC") regulations to bootstrap a negligence-per-se claim. *Walters v. Blue Cross and Blue Shield of Tex., Inc.*, 2022 WL 902735, at *5–6 (N.D. Tex. Mar. 28, 2022) ("[A] statute is not an appropriate basis for a negligence-per-se claim when 'a legislative body declines to provide for an individual private right of action.' ") (citation omitted); *Smith v. Merritt*, 940 S.W.2d 602, 607–08 (Tex. 1997).

Plaintiffs concede that they are not bringing actions under those laws and regulations. Opp.

at 16. Nor could they. BSA, AML, and KYC do not create a private right of action. *See, e.g.*, *Hunter v. Navy Fed. Credit Union*, 2024 WL 3094610, at *5–6 (N.D. Tex. June 20, 2024) (no private right of action under the BSA); *Spitzer Mgmt., Inc. v. Interactive Brokers, LLC*, 2013 WL 6827945, at *2 (N.D. Ohio Dec. 20, 2013) (no private right of action under the BSA or Patriot Act). Plaintiffs' concession bars them from bringing a negligence claim based on these laws and regulations. *Walters*, 2022 WL 902735, at *5–6. But Plaintiffs also cannot back-door these allegations as a duty of care for a negligence action. *Perales* does not hold otherwise. *See Perales v. First Am. Bank Tex., SSB*, 2001 U.S. Dist. LEXIS 13977, at *17–18 (N.D. Tex. 2001). That case only considered federal wire transfer laws and regulations to assist in determining a breach of contract claim that involved a wire transfer. *Id.* The provision the court relied on, section 4.103(c), does not create a statutory cause of action or authorize negligence suits based on federal laws and regulations.[5]

Because Plaintiffs cite no case within the Fifth Circuit certifying a class based on check fraud and because individualized issues facially predominate, Plaintiffs' class allegations must be struck. And because the UCC governs Plaintiffs' gripe about NFCU clearing the forged or fraudulent checks, Plaintiffs' common-law claims are preempted under the relevant states' laws, which dooms all but their UCC presentment warranty claim. The Court should strike Plaintiffs' class allegations and dismiss Plaintiffs' claims with prejudice (other than the section 4.208 presentment warranty claim).

---

[5] In the alternative, Plaintiffs insist that they can plead additional facts to survive a motion to dismiss if given a fifth opportunity. Opp. at 17. But it is *legal* insufficiencies, not just *factual* deficiencies, that doom Plaintiffs' claims. No further facts could overcome those legal barriers. Any further amendment would be futile. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378–79 (5th Cir. 2014); *Rutledge v. United States*, 161 F.3d 7 (5th Cir. 1998).

DATED: May 1, 2026

Respectfully submitted,

*/s/ Andrew LeGrand*

Andrew P. LeGrand
Texas Bar No. 24070132
ALeGrand@gibsondunn.com
Mike Lyons
Texas Bar No. 24071169
MLyons@gibsondunn.com
Emily Cardone
Texas Bar No. 24116592
ECardone@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

*Counsel for Navy Federal Credit Union*

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

/s/ *Andrew LeGrand*