**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **BUCKHOLTS STATE BANK, SUSSER BANK, AND CIERA BANK, on behalf of themselves and all others similarly situated,** | § | |
| **Plaintiffs,** | § | **A-25-CV-52-RP** |
| **v.** | § | |
| **NAVY FEDERAL CREDIT UNION,** | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant Navy Federal Credit Union's Motion to Dismiss and Motion to Strike Class Allegations (Dkt. 45), Plaintiff Buckholts State Bank et al.'s Response to Defendant's Motion to Dismiss and Motion to Strike Class Allegations (Dkt. 47), and Defendant's Reply in Support of its Motion to Dismiss and Motion to Strike Class Allegations (Dkt. 49).[1] After considering the parties' briefing and applicable law, the undersigned recommends the following to the District Judge.

## I. BACKGROUND[2]

Plaintiffs Buckholts State Bank, Susser Bank, and Ciera Bank (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, bring this suit against Navy Federal Credit Union ("NFCU"). *See generally* Dkt. 39. Plaintiffs assert their customers have written

[1] The motion was referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Order dated Oct. 3, 2025.

[2] At this stage of the litigation, all well-pleaded facts are taken as true.

checks that have been intercepted and fraudulently deposited into accounts at NFCU, prompting Plaintiffs to transfer money to NFCU to pay for the checks. Dkt. 39 at 1-3. Neither NFCU nor its customers were entitled to enforce the fraudulent checks. Dkt. 39 at 2. Despite timely notifying NFCU of its errors and requesting that credits be issued back to the Plaintiffs, NFCU has denied the claims. Dkt. 39 at 2-3. As a result, Plaintiffs claim they have become "victims of NFCU and its inadequate practices and procedures" that have allowed this check fraud to repeatedly occur. Dkt. 39 at 1. Specifically, Plaintiffs claim NFCU knew it was a target for check fraud but failed to bolster its security policies and that Plaintiffs suffered from these "lax" policies, practices, and procedures. Dkt. 39 at 4-6.

Plaintiffs assert claims for breach of UCC §§ 4.207, 4.208, 3.406, and 3.418(a)[3]; money had and received and unjust enrichment under Virginia common law, and breach of contract under Texas common law stemming from NFCU's actions. *See* Dkt. 39 at 9. NFCU moves to dismiss with prejudice all of Plaintiffs' claims except those under Section 4.208 of the UCC and argues that all non-UCC claims must be dismissed as preempted. Dkt. 45 at 18. NFCU also asserts Plaintiffs' claims are not appropriate for class treatment. Dkt. 45 at 12.

## II. Standard of Review

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). This standard does not require the

[3] The undersigned ordered Plaintiffs to either file a supplemental brief clarifying which state's laws apply to each claim or to amend their Complaint. *See* Dkt. 38. Plaintiffs did so. *See generally* Dkt. 40. Plaintiffs clarified that "although all claims except [the] Breach of Contract [claim] . . . are technically governed by Virginia law, this distinction should make no difference to the Court's analysis or the outcome because the relevant UCC provisions are materially the same." Dkt. 40 at 1. As such, throughout this Report and Recommendation, the undersigned refers to the UCC provisions adopted by both Virginia and Texas as well as case law from both states addressing the same uniform provisions.

court to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). 'Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). (quoting *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007).

Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify allegations that are mere legal conclusions, and thus not entitled to the assumption of truth. *Id.* "When there are well-pleaded factual allegations, then a court should assume their veracity" and determine whether those

allegations plausibly give rise to an entitlement of relief. *Id.* If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## III. ANALYSIS

### A. Claim for Breach of UCC Warranties §§ 4.207 and 4.208

UCC § 4.208 (codified in Va. Code Ann. § 8.4-207.2) concerns presentment warranties. It states:

> (a) If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, (i) the person obtaining payment or acceptance, at the time of presentment, and (ii) a previous transferor of the draft, at the time of transfer, warrant to the drawee that pays or accepts the draft in good faith that: (1) the warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft; (2) the draft has not been altered; and (3) the warrantor has no knowledge that the signature of the purported drawer of the draft is unauthorized.

Under this UCC provision, "a bank present[s] a check for payment [and] warrants that it has not been altered." *Wachovia Bank, N.A. v. Federal Reserve Bank of Richmond*, 338 F.3d 318, 321 (4th Cir. 2003). "The warranty is made at the time of presentment, and the paying bank, or drawee, that pays the draft in good faith may recover damages against the presenting bank for breach of the presentment warranty." *Id.* NFCU argues that Section 4.208 is the only UCC provision the Plaintiffs could potentially recover under, and NFCU does not seek to dismiss that claim in this motion.[4] Dkt. 45 at 19.

Plaintiffs also assert a claim under UCC § 4.207, codified in Va. Code Ann. § 8.4-207.1, which addresses transfer warranties. It states that:

> A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank that: (1) the warrantor is a person entitled to the enforce the item; (2) all signatures

[4] As such, the undersigned does not address the UCC claim under § 4.208.

> on the item are authentic and authorized; (3) the item as not been altered; (4) the item is not subject to a defense or claim in recoupment . . . of any party that can be asserted against the warrantor; and (5) the warrantor has no knowledge of any insolvency proceeding commenced with respect to the maker or acceptor, or, in the case of an unaccepted draft, the drawer.

*Id.* An instrument is transferred "when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Va. Code Ann. § 8.3A-203(a). Section 8.4-207 relates to warranties made to "the transferee and to any subsequent collecting bank." Va. Code Ann. § 8.4-207.1(a). NFCU contends that Plaintiffs' UCC § 4.207 claim is inapplicable because the code section concerns *transfer* warranties. Dkt. 45 at 20. NFCU states that Plaintiffs do not – and could not – allege NFCU was a *transferor*. Dkt. 45 at 20. In response, Plaintiffs argue that transfer and presentment warranties are not mutually exclusive and that NFCU can be liable for both under the UCC as a "collecting bank that transfer[ed] an item and receive[d] a settlement." Dkt. 47 at 12 (citing UCC § 4.207(a); Va. Code Ann. § 8.4-207.1).

Here, the Plaintiff banks are the "payor banks." *See* Dkt. 45 at 19-20; Dkt. 47 at 12. A "payor bank" refers to "a bank that is the drawee of a draft." Va. Code Ann. § 8.4-105(3). The Plaintiffs do not qualify as "collecting banks" because a collecting bank refers to "a bank handling an item for collection *except the payor bank*." Va. Code Ann. § 8.4-105(5) (emphasis added). "The term 'collecting bank' explicitly does not include a 'payor bank.'" *Cadence Bank v. JPMorgan Chase Bank, N.A.*, Civil Action No. 4:23-CV-02678, 2024 WL 5358446, at *7 (S.D. Tex. Dec. 5, 2024). The payor bank would generally be the "final stop in a check's path to payment," so it "would make no sense for a 'transferee' preceding a 'subsequent collecting bank' in the collection chain to include a 'payor bank.'" *Id.* Thus, Section 4.207 (codified in Va. Code Ann. § 8.4-207.1) seems to "exclude the possibility that a transfer warranty would run to a payor bank." *Id.*

While Plaintiffs generally discuss the UCC provisions in support of their arguments, they do not provide the court with applicable case law or arguments beyond their own interpretations

of the UCC definitions regarding why NFCU was a "transferor" under UCC § 4.207. *See* Dkt. 47 at 13. Further, Plaintiffs claim that "while [they] are payor banks for purposes of the final payment decision, they also function as collecting banks within the broader clearing system." Dkt. 47 at 13. However, as NFCU states, for purposes of the transaction at issue, Plaintiffs are not considered "collecting banks." Simply because Plaintiffs have assumed the role of collecting banks in other, unrelated transactions within "the broader clearing system," does not mean they are considered "collecting banks" for the purposes of the transaction at issue. *See* Dkt. 49 at 13.

Therefore, the undersigned finds UCC § 4.207 inapplicable to these facts and that the claim should be dismissed.

**B. Mistake and Restitution Under UCC § 3.418(A)**

Under Va. Code Ann. § 8.3A-418, "except as provided in subsection (c), if the *drawee* of a draft pays or accepts the draft and the *drawee* acted on the mistaken belief that . . . (ii) the signature of the *drawer* of the draft was authorized, the *drawee* may recover the amount of the draft from the person to whom or for whose benefit payment was made or, in the case of acceptance, may revoke the acceptance." (emphasis added).

Plaintiffs seek to recover under the above provision, claiming that "even if it is determined that Plaintiffs 'mistakenly' paid NFCU, then NFCU still holds each Plaintiff's 'mistaken' payment, and Plaintiffs are entitled to recover from NFCU." Dkt. 39 at 31. NFCU disputes the viability of this claim, relying on the plain language of § 8.3A-418. NFCU claims that § 8.3A-418 permits the "drawee bank" (Plaintiffs) to recover only in two circumstances: "(1) when the drawee bank (Plaintiffs) mistakenly believed that the check had not been stopped; and (2) when the drawee bank (Plaintiffs) mistakenly believed that the signature of the check's drawer (Plaintiffs' customers) was authorized." Dkt. 45 at 19. NFCU argues that the alleged fraud in each instance is from the

*endorser* of the check rather than Plaintiffs' customer (drawer), and as such, this code section is inapplicable. Dkt. 45 at 19.

The undersigned agrees with NFCU that Plaintiffs do not allege their customers (the drawers) placed a stop payment order on the checks or that their signatures on their own checks were unauthorized. Plaintiffs state that NFCU "incorrectly limits [UCC § 3-418, codified in Va. Code Ann. § 8.3A-418] to check stoppage and drawer signatures issues." Dkt. 47 at 13. Plaintiffs then contend that the code section "permits recovery by a drawee bank that pays an instrument under the mistaken belief that payment was authorized." Dkt. 47 at 13. However, that interpretation impermissibly broadens the plain language of § 8.3A-418(a). Further, the code section specifies that the given remedy would be against "the person to whom or for whose benefit payment was made." Va. Code Ann. § 8.3A-418(a). This language has been recognized to apply to the "individual whose name appeared on the check," rather than the depository bank. *Southstar Bank, S.S.B. v. JPMorgan Chase Bank, N.A.*, 796 F. Supp. 3d 386, 389-90 (S.D. Tex. 2025).[5] This code section relates to the fraudulent conduct of the endorser rather than the drawer, rendering UCC § 3.418(a) inapplicable to the facts of this case. *See id.*

Thus, the undersigned finds the claims under Va. Code Ann. § 8.3A-418 should be dismissed.

**C. Negligence**

Plaintiffs claim NFCU allowed fraudulent accounts to be opened, participated in the negotiation of each check, and allowed suspicious or unusual disbursements of funds to unauthorized parties, which caused Plaintiffs to suffer damages. Dkt. 39 at 23. NFCU argues that

[5] Though this case was based on the applicable code provisions in the Tex. Bus. & Comm. Code, as previously mentioned, distinctions between the states' adopted UCC provisions should not impact the court's analysis because the relevant UCC provisions adopted by Virginia and Texas are materially the same. *See* Dkt. 40 at 1.

Plaintiffs' negligence claims should be dismissed for three reasons: (1) Plaintiffs' negligence claim is preempted;[6] (2) the economic loss rule bars the claim; and (3) Plaintiffs cannot sue to enforce the Bank Secrecy Act ("BSA"), Anti-Money Laundering ("AML"), and Know Your Customer ("KYC") processes. Dkt. 45 at 25.

Plaintiffs rely on UCC § 3.406, codified in Va. Code Ann. § 8.3A-406 to argue that NFCU is liable for negligence as a party contributing to a forged signature or to the alteration of an instrument. *See* Dkt. 39 at 23. Rather than challenging the negligence claim rooted in the UCC, NFCU appears only to challenge a common law negligence claim, which the Plaintiffs do not assert here. *See* generally Dkt. 45 at 25. As such, the undersigned does not find that preemption applies in this case. Further, the undersigned finds that NFCU has not met its burden to justify dismissing this claim at this stage, and as such, the undersigned recommends denying the dismissal of Plaintiffs' negligence claim.

**D. Common Law Claims**

Generally, "the UCC preempts any common law claims inconsistent with its provisions." *Wallace ex rel. DMT, LLC v. Truist Bank*, No. 21-2380, 2022 WL 2452355, at *1 (4th Cir. Jul 6, 2022); *see also Peatwatuck Enters. v. Truist Bank*, 773 F. Supp. 3d 366, 370 (S.D. Tex. 2025) ("[w]hen the UCC applies, common law claims that conflict with the UCC are precluded."); *see also* Zuniga *v. Reynolds*, No. 1:23-CV-01279-DII, 2024 WL 3461762, at *2 (W.D. Tex. July 18, 2024), *report and recommendation adopted*, No. 1:23-CV-1279-DII, 2024 WL 3682236 (W.D. Tex. Aug. 5, 2024) ("common law claims exist only to the extent they do not conflict with [UCC] provisions."). "Preemption does not apply if the common law merely supplements, rather than displaces, the UCC." *Cadence Bank*, 2024 WL 5358446, at *5. Plaintiffs assert common law

[6] Specifically, NFCU argues that the negligence claim is preempted by UCC §§ 4.208 and 4.302. Dkt. 49 at 16.

claims against NFCU, including claims for money had and received and unjust enrichment. *See* Dkt. 39 at 16-23. NFCU contends these claims are preempted by the UCC and should therefore be dismissed. *See* Dkt. 45 at 22-25.

1. *Money Had and Received and Unjust Enrichment*

Plaintiffs cite three main sources to support their contention that the UCC does not preempt their common law claims for money had and received and unjust enrichment: (1) UCC § 3-118(g) (codified in Va. Code Ann. § 8.3A-118(g)); (2) UCC § 1-103(b) (codified in Va. Code Ann. § 8.1A-103); and (3) Virginia case law. Dkt. 47 at 18.

However, the two UCC provisions Plaintiffs rely on do not establish the absence of preemption. Section 8.3A-118(g) merely states that "unless governed by other law regarding claims for indemnity or contribution, an action . . . for money had and received . . . must be commenced within three years after the cause of action accrues." The mere mention of the common law cause of action does not mean that preemption does not apply. Further, Va. Code Ann. § 8.1A-103(b) states that the "principles of law and equity" supplement the UCC's provisions "*unless displaced by* the particular provisions of the Uniform Commercial Code." (emphasis added).[7]

The primary case Plaintiffs cite in support of their contention that the UCC does not supplant these common law claims is *Schlegel v. Bank of America*. 628 S.E.2d 362 (Va. 2006). There, the Virginia Supreme Court was tasked with determining whether unauthorized payment orders and the subsequent freezing of funds were "covered" by the provisions of Title 8.4A such that the common law claims pertaining to both parts of the transaction were preempted. *Id.* at 546.

[7] The relevant comment to the UCC adds that "while principles of common law and equity may *supplement* provisions of the Uniform Commercial Code, they may not be used to *supplant* its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies." Va. Code Ann. § 8.1A-103, cmt. 2.

The case explains the general principle that situations unaddressed by the UCC are not categorically preempted, but the case's factual scenario is distinct from the case at bar. *See id.* *Schlegel* concluded that the common law claims regarding the unauthorized payment orders were preempted, but the claims involving the freezing of the funds were not preempted because funds-freezing was not a "situation covered by any of the particular provisions of Title 8.4A." *Id.* at 554-55. Despite the case's general discussion of preemption, the case does not serve as a proper response to NFCU's arguments and applicable case law concerning the preemption of Plaintiff's money had and received and unjust enrichment claims. As such, the undersigned finds these common law claims should be dismissed.

*2. Breach of Contract Under Texas Common Law*

Under Texas law, "the UCC regulates a bank's handling of deposits and collections for its customers." *Am. Dream Team, Inc. v. Citizens State Bank*, 481 S.W.3d 725, 732 (Tex. App.—Tyler, 2015) (citing Tex. Bus. & Comm. Code Ann. §§ 4.101-.504). Where the UCC applies, "common law rules regarding breach of contract do not apply." *Id.*

Plaintiffs argue NFCU is liable for breach of contract under Texas common law. Dkt. 39 at 28. Plaintiffs claim that each check NFCU accepted for deposit and/or negotiated is a contract under Texas law and that NFCU must be held to the terms of each contract. Dkt. 39 at 29. This would require NFCU to either pay the money owed to the true payee or to return the money to the check's maker. Dkt. 39 at 29. NFCU counters this by arguing that UCC § 4.214 applies to chargebacks and governs here over any common law breach of contract claim. Dkt. 45 at 21.

Plaintiffs rely on *½ Price Checks Cashed v. United Automobile Ins. Co*, 344 S.W.3d 378 (Tex. 2011), which stands for the proposition that a check is a type of negotiable instrument and serves as a formal contract between the parties. *Id.* at 383-84. Plaintiffs use this as authority to

argue that their breach of contract claim arises directly from this contractual relationship rather than an "external common law duty," and is therefore not preempted by the UCC warranty provisions. Dkt. 47 at 14. However, as NFCU argues, *½ Price Checks Cashed* does not directly address preemption by the UCC, and the case's holding is narrow. Rather, that court simply concluded that a suit on a check under UCC § 3.414 is a suit on a contract before discussing this principle's relevancy to the availability of attorney's fees under Texas Civil Practice and Remedies Code § 38.001. *Id.* at 385-86. Plaintiffs fail to explain how *½ Price Checks Cashed* helps establish that they have a valid breach of contract claim under the facts of this case. As such, the undersigned recommends dismissing this claim.

### E. Class Certification

NFCU also moves to strike Plaintiffs' class allegations under Rule 23. The undersigned finds that that is premature. Rather, this issue should be addressed by a later motion to certify the class and/or Texas subclass.

## IV. Recommendations

For the reasons stated above, the court **RECOMMENDS** that Defendant's Motion to Dismiss (Dkt. 45) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the undersigned recommends denying dismissal of the Plaintiffs' negligence claim and granting the dismissal of the claims for breach of UCC § 4.207, mistake and restitution under UCC § 3.418(A), money had and received, unjust enrichment, and breach of contract under Texas common law.

## V. Objections

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See*

*Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED November 24, 2026.

MARK LANE
UNITED STATES MAGISTRATE JUDGE